**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHAPCO, INC. and SAMSARA FITNESS, LLC, | : : | CIVIL CASE NO. |
| Plaintiffs, | : : | 3:15-CV-1665 (JCH) |
| v. | : : | |
| WOODWAY USA, INC., | : | SEPTEMBER 26, 2017 |
| Defendant. | : | |

**RULING RE: CHAPCO AND SAMARA'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 88), WOODWAY'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 94), WOODWAY'S MOTION TO STRIKE PORTIONS OF THE OPENING EXPERT REPORT OF DR. ROBERT GIACHETTI (DOC. NO 89), AND WOODWAY'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF ROBERT GIACHETTI (DOC. NO. 102)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 2

II.    FACTS ........................................................................................................... 3

III.   LEGAL STANDARD ...................................................................................... 4

IV.    DISCUSSION ................................................................................................ 5

   A.    Infringement by Chapco ............................................................................ 6

      1.   Direct Infringement ............................................................................ 6

      2.   Indirect Infringement ......................................................................... 8

      3.   Alter-Ego Theory ............................................................................. 10

   B.    Infringement of the '580 Patent ............................................................... 13

   C.    Non-Infringement of the '169 Patent ....................................................... 19

   D.    Invalidity of the '169 and '580 Patents .................................................... 22

      1.   Motion to Strike Portions of Dr. Giachetti's Opening Expert Report ...... 22

      2.   Motion to Strike Portions of Dr. Giachetti's Declaration ........................ 30

      3.   Obviousness .................................................................................... 35

      4.   Anticipation ..................................................................................... 39

      5.   Indefiniteness, Written Description, and Enablement ........................... 40

   E.    Non-Infringement of the '866 Patent ....................................................... 41

F.      Lanham Act and CUTPA Violation ................................................................ 43
V.      CONCLUSION ............................................................................................ 43

## I.      INTRODUCTION

Plaintiffs Chapco, Inc. ("Chapco") and Samsara Fitness, LLC ("Samsara"), (collectively, "plaintiffs") brought this action seeking a declaratory judgment against defendant Woodway USA, Inc. ("Woodway"). The plaintiffs ask the court to declare that the plaintiffs' "TrueForm Runner" treadmill products do not infringe Woodway's U.S. Patent Nos. 8,986,169 and 9,039,580 and to declare that those two patents are invalid. See Am. Compl. (Doc. No. 27). Woodway counterclaimed, alleging infringement of the two patents at issue, as well as infringement of U.S. Design Patent Nos. D736,866 and D753,776.[1] See Answer to Am. Compl. and Countercls. (Doc. No. 54). Plaintiffs filed their Answer to Woodway's counterclaims. See Pls.' Answer (Doc. No. 58).

After briefing and oral argument, the court issued its Claim Construction Ruling on December 8, 2016. See Claim Construction Ruling (Doc. No. 76). The court then permitted Woodway to supplement its counterclaims with an additional claim of Copyright Infringement. See Order granting Mot. for Leave to File (Doc. No. 84); Woodway's Supplemental Counterclaims ("Woodway's Suppl. Countcls.") (Doc. No. 85); Pls.' Answer to Def.'s Suppl. Counterclaims (Doc. No. 87).

The parties have now both filed cross Motions for Summary Judgment. See Mot. for Summ. J. on Counts I, II, III, IV, VI, and VII of Woodway's Counterclaims ("Pls.'

---

[1] Woodway originally moved to dismiss this action in favor of a pending case it had filed in the Eastern District of Wisconsin. The Wisconsin court, however, dismissed that action for lack of personal jurisdiction. Woodway then counterclaimed in this case. Thus this action became the primary venue for the dispute between these parties. See Woodway's Mot. to Withdraw (Doc. No. 46).

MFSJ") (Doc. No. 88); Mot. for Summ. J. of Infringement of U.S. patent No. 9,039,580 and Partial Summ. J. of No Invalidity of U.S. Patent Nos. 8,986,169 and 9,039,580 ("Woodway's MFSJ") (Doc. No. 94). Additionally, Woodway has moved to strike portions of both the opening expert report and the declaration of the plaintiffs' expert, Dr. Robert Giachetti ("Dr. Giachetti"). <u>See</u> Mot. to Strike Portions of the Opening Expert Report of Dr. Robert Giachetti ("Mot. to Strike Report") (Doc. No. 88); Mot. to Strike Portions of the Declaration of Robert Giachetti ("Mot. to Strike Decl.") (Doc. No. 89). Woodway, in footnote 12 of its Response to the plaintiffs' Motion for Summary Judgment, has withdrawn its allegations of infringement of the D753,776 Patent (Count IV of Woodway's Counterclaims), which the court so orders. <u>See</u> Woodway's Mem. in Resp. to Pls.' Mot. for Summ. J. on Counts I, II, III, IV, VI, and VII of Woodway's Suppl. Countercls. ("Woodway's MFSJ Resp.") (Doc. No. 112) at 19 n.12.

## II.    FACTS

The facts below are drawn from the parties' undisputed statements of fact, as presented in their Rule 56 statements.[2]

U.S. Patent No. 8,986,169 (the "'169 Patent"), entitled "Manual Treadmill and Methods of Operating the Same," was issued on March 24, 2015. <u>See</u> Pls.' L.R. 56(a)2 Statement ("Pls.' L.R. 56(a)2 Stmt.") (Doc. No. 101) at ¶ 1. U.S. Patent No. 9,039,580 (the "'580 Patent"), entitled "Manual Treadmill and Methods of Operating the Same," was issued on May 26, 2015. <u>See</u> <u>id.</u> at ¶ 2. Both patents are assigned to Woodway. <u>See</u> <u>id.</u> at ¶¶ 5–6. U.S. Design Patent No. D736,866 (the "'866 Patent") issued on

---

[2] Woodway's submission of a "Supplemental Statement of Material Facts" in connection with its Reply is not authorized by the Local Rules and as such was disregarded. <u>See</u> Doc. No. 118.

August 18, 2015.  <u>See</u> Woodway's L.R. 56(a)2 Statement of Facts in Resp. to Pls.' Mot. for Summ. J. ("Woodway's L.R. 56(a)2 Stmt.") (Doc. No. 108) at ¶ 32.  Woodway asserts that the plaintiffs infringe multiple claims of both utility patents (the "Asserted Claims"), as well as the single claim of the '866 patent.  <u>See</u> Am. Countercls. at ¶¶ 14, 23, 32.

Samsara sells three models of the TrueForm Runner Treadmill: the Low Rider, the Enduro and the Performance (the "Accused Products").  <u>See</u> Pls.' L.R. 56(a)2 Stmt. at ¶ 9.  Chapco makes and sources at least some of the components of the Accused Products for Samsara.  <u>See</u> Woodway's L.R. 56(a)2 Stmt. at ¶ 18. The original base of the TrueForm Runner included a one-way bearing safety mechanism on the rear shaft of the treadmill (the "Original TrueForm Runner").  <u>See</u> Pls.' L.R. 56(a)2 Stmt. at ¶ 11. After plaintiffs were informed of the issuance of the '169 patent, the safety mechanism on the TrueForm Runner was moved to the front shaft of the treadmill (the "Redesigned TrueForm Runner").  <u>See</u> <u>id.</u> at ¶ 12.  This product is still offered for sale by Samsara. <u>See</u> <u>id.</u> at ¶ 13.

## III.    LEGAL STANDARD

On a motion for summary judgment, "[t]he moving party bears the burden of establishing the absence of any genuine issue of material fact."  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party satisfies that burden, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor."  <u>Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins.</u>

Co., 421 F. App'x 52, 53 (2d Cir.2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)) (holding that the non-moving party must demonstrate more than a mere "scintilla" of evidence in its favor). "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

The court's role in resolving motions for summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh, 642 F.3d 110, 116 (2d Cir. 2011). In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

## IV.     DISCUSSION

The court will proceed to discuss the issues raised by the parties in the following order: first, the court will consider the plaintiffs' argument that Chapco does not commit any infringing acts. Then the court will proceed to consider whether to grant either parties' Motion for Summary Judgment as to infringement of the claims of the '580 Patent. Next, the court turns to the plaintiffs' Motion for Summary Judgment of noninfringement of the '169 Patent. The court then will proceed to consider the parties' Motions for Summary Judgment as to validity or invalidity of the utility patents, as well as consider the Motions to Strike in that context. The court will then turn to the plaintiffs' Motion for non-infringement of the '866 Patent. This Ruling concludes by addressing Woodway's withdrawal of its Counterclaims VI and VII under the Lanham Act and Connecticut Unfair Trade Practices Act (CUTPA).

5

A.    Infringement by Chapco

1.    Direct Infringement

The plaintiffs have moved for summary judgment of non-infringement by Chapco because they claim that there is no evidence that Chapco, "without authority makes, uses, offers to sell, or sells any patented invention . . . ." 35 U.S.C. § 271(a).  In order to prove direct infringement, Woodway must establish by a preponderance of the evidence that the Accused Products practice each limitation contained in one or more claims of the asserted patents.  See Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 (Fed. Cir. 2005).  Direct infringement occurs where all of the infringing acts "are performed by or attributable to a single entity."  See Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (discussing infringing acts in the context of a methods patent.

The plaintiffs argue that Chapco does not make, use, offer to sell, or sell any of the Accused Products, and therefore it is not a direct infringer.  See Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' MFSJ Mem.") (Doc. No. 88-1) at 4–8.  Citing to the Affidavit of Brian Weinstein ("Weinstein"), the President of Chapco, the plaintiffs argue that Chapco has never made or assembled the Accused Products, but rather machines and sources some components of the Accused Products, as well as leasing Chapco employees to Samsara, who then assembles the components into the Accused Products.  See id. at 5.  Additionally, the plaintiffs argue that there is no evidence that Chapco has ever used, offered for sale, sold, or imported any Accused Product, but instead that any customer looking to purchase the Accused Product would do so from Samsara.  See id. at 6; Woodway's L.R. 56(a)2 Stmt. at ¶ 22 (admitting that Chapco has never sold or offered for sale any Accused Product).

Woodway responds by pointing out that Weinstein testified that Chapco did, at one point, assemble the Accused Products. <u>See</u> Woodway's L.R. 56(a)2 Stmt. at ¶ 17 (citing Weinstein Dep. (Doc. No. 106-29) at 182:30–183:12). This statement alone, however, cannot prove that Chapco makes the Accused Products, because at the time that Chapco employees assembled the products in 2014, the patents had not yet issued. <u>See</u> <u>id.</u> at ¶¶ 28, 30, 32 (indicating that all remaining patents-in-suit issued in 2015).

Woodway also argues that it is Chapco employees who assemble the final product, even if they are leased to Samsara for the purpose of assembling the final products. <u>See</u> Woodway's Mem. of Law in Resp. to Pls.' Mot. for Summ. J ("Woodway's MFSJ Resp.") (Doc. No. 112) at 13 (citing Chapco's 30(b)(6) Dep. (Doc. No. 106-20) at 37:6–20). Woodway claims that a Chapco employee sources every component not made by Chapco. <u>See</u> <u>id.</u> Weinstein, as Chapco's 30(b)(6) designee, testified that a Chapco employee sources the components that Chapco does not make on behalf of Samsara. <u>See</u> Chapco's 30(b)(6) Dep. at 133:9–134:24.

Woodway's final argument that Chapco directly infringes the Accused Products rests on the deposition testimony of Jeremiah Rabe, a Chapco engineer who testified that he has worked on the design of the control board display, the pulley's attachment to the shaft, and the one-way bearing. <u>See</u> Woodway's MFSJ Resp. at 14. Rabe testified that he had spent a week on redesigning the control board, and about four hours redesigning the pulley attachment. <u>See</u> Dep. of Rabe (Doc. No. 106-1) at 27:16-29:20.

Chapco admits that its employees assemble the Accused Products, but argues that those are not Chapco employees acting on behalf of Chapco, but rather are

Chapco employees leased to Samsara in an arm's length transaction wherein Samsara is charged by Chapco for its employee's labor. See Pls.' MFSJ Mem. at 5. However, this arrangement does not insulate Chapco from a claim that its employees infringe the patents-in-suit while making the Accused Products on behalf of Samsara, because there is a genuine issue of material fact as to whether Chapco, whose employees are being used to assemble the Accused Products, is making those products by leasing its employees to Samsara, designing the Accused Products, and sourcing the components not made by Chapco itself.

Woodway has come forward with sufficient evidence to create a genuine issue of material fact as to whether Chapco makes the Accused Products, and therefore Chapco's Motion for Summary Judgment as to Woodway's Counterclaims I–III is **DENIED** insofar as Woodway advances a theory of direct infringement.

### 2. Indirect Infringement

Woodway's Counterclaims also allege indirect infringement. See Am. Counterclaims at ¶¶15, 24. These counterclaims allege that "Chapco and Samsara induced and continue to actively induce the direct infringement of [the Asserted Claims] by aiding, abetting, and encouraging their customers' use of the TrueForm Runner. . . with knowledge of the infringement [of the asserted patents] and with the intent to cause such infringement." Id. The plaintiffs argue that Woodway has provided no evidence to support its allegation of indirect infringement by Chapco as to its customer, Samsara. Pls.' MFSJ Mem. at 7–8.

Before considering the merits of the indirect infringement arguments, the court must address the plaintiffs' argument regarding the deficiency in Woodway's infringement disclosures. Just as Woodway argued that the plaintiffs failed to include all

8

of their theories of invalidity in their invalidity contentions, the plaintiffs argue that Woodway's infringement contentions do not disclose any indirect infringement theory. <u>See</u> Woodway's Mem. in Supp. of Mot. to Strike Expert Report ("Mot. to Strike Report Mem.") (Doc. No. 91) at 4–5; Pls.' MFSJ Mem. at 7–8.  A review of the infringement contentions confirms that Woodway failed to include any argument that Chapco induced Samsara to infringe. [3]  <u>See</u> Woodway's Suppl. Infringement Contentions (Doc. No. 90-7).  Woodway cannot claim to be prejudiced by an undisclosed theory of invalidity and, at the same time argue that it should not be held to the same standard with regards to its infringement theories.  <u>Compare</u> Mot. to Strike Report Mem. at 4, <u>with</u> Woodway's L.R. 56(a)(2) Stmt. at ¶ 39. The purpose of the infringement and invalidity contentions was to narrow the scope of discovery and issues for trial, a purpose only served by timely disclosure of the parties' various theories.  <u>See</u> <u>infra</u> at sections IV.D.1-2; <u>see also</u>, <u>Logic Devices, Inc. v. Apple, Inc.</u>, No. 13-02943 WHA, 2014 WL 491605, at *3 (N.D. Cal. Feb. 4, 2014) (holding that, under the California patent rules, claims of indirect infringement were properly dismissed when not disclosed in the plaintiff's infringement contentions).  Where a party fails to include its theories of indirect infringement in its infringement contentions, the court may properly conclude that that party is precluded from pursuing that theory.  <u>See</u> <u>Holmberg v. Stealth Cam, LLC</u>, Civil

---

[3] Nor does Woodway sufficiently raise an issue of indirect infringement in its pleadings.  In Woodway's Answer and Supplemental Counterclaims, Woodway does cite section 271(b) of title 35 of the United States Code.  <u>See</u> Woodway's Answer to Amended Complaint (Doc. No. 54) at ¶¶ 14, 23, 32, 41; Woodway's Suppl. Countercls. at ¶¶ 15, 24, 33, 42.  However, in doing so, Woodway does not claim that Chapco induced Samsara's infringement, but rather that "Chapco and Samsara induced and continue to actively induce the direct infringement of [the respective patents] by aiding, abetting, and encouraging their customers' use of the TrueForm Runner Original Design and Redesigned manual treadmills."  <u>See, e.g.</u>, Woodway's Suppl. Countercls. at ¶ 24.  This is distinct from the indirect infringement argument they now seek to raise against Chapco.

No. 11-248 (DWF/LIB), 2014 WL 1584484, at * 6 (D. Minn. Apr. 18, 2014) (dismissing indirect infringement theories where they were not disclosed beyond the conclusory allegations in the pleadings).

Woodway failed to provide notice of its claims of induced infringement under 271(b), beyond the conclusory allegations in its counterclaims, and a similarly conclusory interrogatory response that merely restated that it was pursuing claims of induced infringement of claims 11-16 of the '169 patent and claims 1, 4–6, 10–14, 18–20, and 25 of the '580 patent. See Woodway's Resp. and Obj. to Pls.' First Interrogs. (Doc. No. 95-8) at 9. Woodway's failure to provide notice of its indirect infringement theory in its infringement contentions results in Woodway being precluded from now pursuing a theory of indirect or induced infringement. See Holmberg, 2014 WL 1584484, at *6.

For the preceding reasons, the plaintiffs' Motion for Summary Judgment as to Woodway's Counterclaims I–III is **GRANTED** insofar as Woodway purported to advance a theory of indirect infringement against Chapco.

### 3.    Alter-Ego Theory

Finally, Woodway argues that both Chapco and Samsara are the alter-ego of Brian Weinstein. In determining whether to pierce corporate formalities because two entities are alter egos of each other, the court must apply the law of the state of incorporation, in this case Connecticut. See Taurus IP, LLC v. DaimlerChrysler Corp., 726 F.3d 1306, 1336 (Fed. Cir. 2013) (citing Restatement (Second) of Conflict of Laws § 309 (1971)). Connecticut law establishes two circumstances which would permit the court to pass the liability of one business entity to another: the instrumentality rule, in which one entity is merely an instrumentality of the other; and the identity rule, in which

the two entities have such a unity of interest and ownership that their independence from each other had ceased or never begun. <u>See</u> <u>Naples v. Keystone Bldg. and Dev. Corp.</u>, 295 Conn. 214, 232 (2010).

To avoid summary judgment on this claim, Woodway must come forward with evidence upon which a reasonable jury could find three elements: (1) control, though not mere complete stock control "but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence"; (2) that the control was used to commit the wrong in contravention of Woodway's rights; and (3) that the control caused the injury complained of. <u>Id.</u> Similarly, the identity rule requires evidence that "there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or never begun," such that "adherence to the fiction of separate identity would only serve to defeat justice." <u>Id.</u>

Thus, under both tests, the primary question is whether an entity is completely dominated by another. Courts looking to determine the degree of domination or control have looked to the following non-exclusive factors: (1) absence of corporate formalities; (2) inadequate capitalization; (3) whether funds are used for personal rather than corporate purposes; (4) overlapping ownership and management; (5) common office spaces, addresses and phones; (6) the amount of discretion by the allegedly dominated corporation; (7) whether the corporations dealt with each other at arm's length; (8) whether they are treated as independent profit centers; (9) payment  or guarantee of debts of the dominated corporation; and (10) whether the corporation in question had property that was used by the other entities as if it were its own. <u>See</u> <u>id.</u> at 233–34

(citing <u>Litchfield Asset Mgmt. Corp. v. Howell</u>, 70 Conn. App. 133, 152–53 (2002)). "Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, whether the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." <u>Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.</u>, 187 Conn. 544, 557 (1982).

Applying these factors to this case, there is a genuine issue of fact as to whether Chapco and Samsara are both alter-egos of Weinstein. Weinstein is the President of Chapco and the managing member of Samsara. <u>See</u> Chapco 30(b)(6) Dep. at 22:15-17; 48:24-49:2. On the record before the court, Woodway argues that: (1) Weinstein has personally guaranteed debts of both Chapco and Samsara; (2) Samsara had a year-to-date loss of approximately $340,000 as of December 2016; and (3) Samsara owes Chapco $800,000 with no current payment plan. Woodway's MFSJ Resp. at 17–18. Additionally, Samsara has no employees of its own; instead it leases employees from Chapco as needed. <u>See</u> <u>id.</u> at 18. These pieces of evidence are sufficient to create a genuine issue of fact as to the relationship of independence that Samsara and Chapco exhibited from each other and from their management, Weinstein. As such the court will not preclude alter-ego arguments from being advanced.

In sum, the plaintiff's Motion for Summary Judgment as to Woodway's Counterclaims I–III is **GRANTED** to the extent that Woodway advances a theory of indirect infringement against Chapco. The plaintiff's Motion for Summary Judgment on the same counts is **DENIED** to the extent that Woodway advances a theory of direct infringement or alter ego.

B.    Infringement of the '580 Patent

The court now turns to the heart of the litigation—the parties' cross motions for summary judgment of infringement or non-infringement of the asserted patents.  See Pls.' MFSJ Mem. at 8–17; Woodway's Mem. of Law in Supp of Mot. for Summ. J. ("Woodway's MFSJ Mem.") (Doc. No. 97) at 11–28.  "Summary judgment is as available in patent cases as in other areas of litigation."  Tokai Corp. v. Easton Enters, Inc., 632 F.3d 1358, 136 (Fed. Cir. 2011) (citations omitted).  The court may enter judgment of infringement if there is no factual dispute that the Accused Products contain every element in an asserted claim.  See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1369 (Fed Cir. 2009).  By contrast, if the court finds that there is an absence of evidence to support Woodway's theory of infringement, it may enter judgment of non-infringement.  See Exigent Tech., Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1308 (Fed. Cir. 2006).

The court conducts a two-step analysis when determining infringement: first, the court determines the proper scope and meaning of any ambiguous claims asserted, and next it determines whether the accused devices practice every limitation contained within those properly construed claims.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  The court has already addressed the first step of this process.  See Claim Construction Ruling (Doc. No. 76).  "A district court's Markman order is an explanation to the parties of the reasoning behind its claim construction[,]" and, thus it is the ultimate constructions which are controlling, not the analysis itself.  See MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1329 (Fed Cir. 2005), vacated on other grounds, eBay, Inc. v. MercExchange LLC, 547 U.S. 388 (2006) (discussing how the court's Markman order need not be provided to the jury).  It

is uncontested that Samsara sells the Accused Products, and so the only question is whether the Accused Products literally infringe the '580 Patent. See Pls.' L.R. 56(a)2 Stmt. at ¶ 13.

As a preliminary matter, Woodway has moved for summary judgment of literal infringement of Claims 1, 6, 19, and 20 of the '580 patent. See Woodway's MFSJ Mem. at 20-28. Its brief contains sections addressed to each element of those claims. See id. The plaintiffs respond by principally contesting only two elements: the bearing rail and the frame, both having been construed earlier by the court during claim construction.[4] See Pls.' Opp. to Woodway's Mot. for Summ. J ("Pls.' MFSJ Opp.") (Doc. No. 100) at 8-15.

Woodway has offered admissible evidence to support its claim of infringement of every other element of the listed claims, which the plaintiffs have only refuted in their Rule 56(a)2 statement, largely as the other limitations relate to the bearing rail and frame limitations. See, e.g., Pls.' L.R. 56(a)2 Stmt. at ¶ 50; D. Conn. L. Civ. R. 56(a)2 ("A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law."). The plaintiffs confusingly dispute whether the safety device on the Accused Products is a regular clutch assembly with transmits torque in one direction and allows free overrun in the other, see Pls.' L.R. 56(a)2 Stmt. at ¶¶ 56, 58, but then admit that the safety device in the redesigned product is structured to prevent rotation of the front shaft in a first direction while

---

[4] The plaintiffs also argue that the "frame" limitation is not in direct contact to the front shaft and rear shaft as required by claim 11 of the '580 patent. See Pls.' MFSJ Opp. at 15. Whether or not this is true is not relevant to resolution of Woodway's MFSJ, as Woodway did not move for summary judgment as to claim 11. See Woodway's MFSJ Mem. at 20.

permitting rotation in the second direction. See id. at 57. Otherwise, their chief complaint is that Woodway cited to Blair's entire infringement report instead of specifically citing the pages, as required by the District's Local Rules. See id.; D. Conn. L. Civ. R. 56(a)3. Although the plaintiffs are correct that Woodway has failed to file its statement in accordance with Local Rule 56(a)3, see Pls.' MFSJ Opp. at 4, and so Woodway's 56(a)1 Statement was largely unhelpful in the infringement analysis, the court was able to determine the basis for Woodway's statements in its Local Rule 56(a)1 Statement. Having done so, the court concludes that the evidence supports a finding that, if the components identified by Woodway to be the "frame" and "bearing rail" satisfy the limitations as defined in the court's Claim Construction Ruling, then a judgment of infringement as to the Accused Products should enter. See Pls.' L.R. 56(a)2 Stmt. at ¶ 26 (admitting that each of the Asserted Claims includes the limitations "frame" and "bearing rail").

The court has already construed the two limitations still at issue: the term "frame" was not further construed, as the court found its plain and ordinary meaning would be clear to a person of ordinary skill, see Claim Construction Ruling at 5–7, and the term "bearing rail" was construed as "a rail with bearings whose top profile corresponds to the shape of the running surface." See id. at 8–13. Having construed the terms, the only analysis left to be done is a comparison between the terms, as construed, and the Accused Products. See Cybor, 138 F.3d at 1454.

The plaintiffs' main argument is that the Accused Products lack a bearing rail, or a rail with bearing whose top profile corresponds to the shape of the running surface. See Pls.' MFSJ Mem. at 11–16. Plaintiffs' expert, Giachetti, removed the handrails,

side covers, and the side assembly that Woodway argues is the frame, and yet the treadmill retains its shape, even if weight is applied. See id. at 12. The plaintiffs argue that, because the part identified as the bearing rail appears to also give the treadmill shape and structure, it must be a frame, and therefore cannot be a bearing rail. See id. This argument is not supported by the court's prior Claim Construction Ruling.

In order to satisfy the bearing rail limitation, the Accused Product must have a component that is "a rail with bearings whose top profile corresponds to the shape of the running surface." See Claim Construction Ruling at 13. The part indicated by a number 1 (labelled "inner frame rail curved") in the plaintiffs' treadmill assembly stage 1 drawing is a rail, curved to correspond to the curved shape of the running surface, which has bearings attached to it. See Chapco Treadmill Assembly Stage 1 (Doc. No. 90-9) at 3. Plaintiffs offer no arguments that the device is not a rail with bearings whose top profile corresponds to the shape of the running surface. Instead, they contend that this component cannot be a bearing rail because it bears the user's weight and helps provide support and structure to the treadmill. See Pls.' MFSJ Mem. at 11–12; Pls.' MFSJ Opp. at 15. Plaintiffs' arguments about which component of the product bears the user's weight do not respond to the court's Claim Construction Ruling.

The court construed the term "bearing rail" to mean a rail with bearings whose top profile corresponds to the shape of the running surface. The plaintiffs are correct that the court considered the ambiguity inherent in the word bearing, but they are incorrect in understanding the court's Claim Construction Ruling to mean that the bearing rail cannot bear the user's weight. See Pls.' MFSJ Mem. at 11-12. The court addressed whether the bearing rail necessarily bore the user's weight, not whether it

<u>could</u> bear the user's weight.[5]  <u>See</u> Claim Construction Ruling at 12.  The court's final construction of the term does not include any reference to the weight bearing construction that the plaintiffs' improperly argue now, many months after the court issued its Claim Construction Ruling.  As such, the portion of the plaintiffs' expert report which is directed to demonstrating that the rails with bearings whose top profile corresponds to the running surface also can support the weight of the user is irrelevant to the question before the court.  The plaintiffs cite no relevant evidence that could create a genuine issue of fact as to the presence of a bearing rail in the Accused Products consistent with the court's Claim Construction Ruling.

Next, the court must consider whether there exists an element that could satisfy the "frame" limitation.  Woodway directs the court to the parts labelled 1 in the following image:



---

[5] Although the Claim Construction Ruling states, "both parties acknowledged at oral argument that the term bearing rail referred to a rail with bearings, not a rail that bears weight," this statement indicates that a rail must have bearings to be a bearing rail, but does not have to bear weight to do so. <u>See</u> Claim Construction Ruling at 13.  Not requiring the rail to bear weight does not, however, mean that a bearing rail cannot bear weight, as omitting that element from the definition should broaden rather than narrow it.  By analogy, the court did not specify in the definition of the bearing rail that it must be black, but that does not mean that a rail with bearings ceases to be a bearing rail merely because it is black.

Woodway's MFSJ Mem. at 20-21.  The plaintiffs counter that this portion of the Accused

Products is not a "frame" because it can be removed and the treadmill still maintains its

shape.  See Pls.' MFSJ Mem. at 15; Pls.' MFSJ Opp. at 13-14.  To further prove this

point, Giachetti removed this piece of the Accused Products, and added feet directly to

the part that the court has identified as the bearing rail, and found that the treadmill

remains optional.  See Pls.' MFSJ Resp. at 14.   The plaintiffs argue that, because the

treadmill is usable when the alleged frame is replaced with another part, that component

cannot be a frame.  Again, plaintiffs' argument imports language from the court's Claim

Construction Ruling's analysis while ignoring the plain language and meaning of its

conclusion.  See Pls.' MFSJ Resp. at 8-9.

The court determined that the term frame required no additional construction

because its meaning was unambiguous to a person of ordinary skill in the art.  See

Claim Construction Ruling at 5-8.  Plaintiffs look beyond the court's Ruling to its

analysis, wherein the court cited to a dictionary definition of the word frame, and then

they take that analysis even further to suggest that the "frame" at issue in the patent

must be the only component which gives the treadmill structure shape or support.  See

Pls.' MFSJ Resp. at 15 (inventing new claim constructions to "require a 'bearing rail' that

does not bear weight, and is a component separate from a 'frame,' which bears weight

and provides structure and support.").  Plaintiffs' attempt to prove that the Accused

Products do not infringe the patents by deconstructing the treadmills, adding new

components, and then demonstrating that the treadmills can operate in a new

configuration is nothing more than a distraction.  See Pls.' MFSJ Mem. at 12.  The

question is not whether the product, assembled in some different fashion might not

infringe, but whether the product as currently assembled and sold does infringe. See Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1343 (Fed. Cir. 2001) ("We agree that tests of an accused device under unusual conditions are not necessarily relevant to an infringement analysis."). Further, nothing in the court's Claim Construction Ruling or the patents require that the frame be the only component to provide support and structure: it just requires that there is a frame as that term is normally understood. The plaintiffs' expert offers no evidence that would undermine a finding that the part identified as the frame by Woodway is in fact a frame, other than the irrelevant deconstruction and redesign. Therefore, no reasonable jury could conclude that the parts identified as the "frame" by Woodway do not satisfy the "frame" element.

Because there is no genuine issue of material fact as to whether the Accused Products contain every element in claims 1, 6, 19, and 20, Woodway's Motion for Summary Judgment of infringement of the '580 patent, under Woodway's Counterclaim II, is **GRANTED** against Samsara.[6]  The plaintiffs' Motion for Summary Judgment as to Woodway's Counterclaim II is accordingly **DENIED**.

C.    Non-Infringement of the '169 Patent

Plaintiffs next argue that they are entitled to summary judgment of non-infringement of the '169 Patent because they redesigned the original TrueForm Runner immediately after the '169 Patent issued. See Pls.' MFSJ Mem. at 16-17.  The '169 Patent issued on March 24, 2015, to Woodway and on the same day, Woodway's President called Weinstein and asked for a meeting. See Woodway's L.R. 56(a)2 Stmt.

---

[6] Woodway only moved for summary judgment on Count II against Samsara, not against Chapco.

19

at ¶ 75.  Weinstein testified that, within one day of this meeting, he told two Chapco employees to move the one-way bearing to the front shaft.  <u>See</u> Chapco 30(b)6 Dep. at 177.  Because independent Claim 11 requires the safety device to be adjoined to the rear shaft and Claims 12–16 depend on Claim 11, the plaintiffs argue that the immediate redesign means there is no evidence that Woodway is able to present that either Samsara or Chapco made, offered for sale, or sold any Accused Product with the safety device adjoined to the rear shaft after the '169 Patent issued.  <u>See</u> Pls.' MFSJ Mem. at 17.

 Woodway responds that there is a material dispute regarding the timing of the redesign.  <u>See</u> Woodway's MSFJ Resp. at 10–13.  Woodway complains that it was unable to determine the precise date from depositions or documentary evidence, and cites to two pieces of evidence which it argues undermines the plaintiffs' claim that the redesign was immediate.  <u>See</u> <u>id.</u> at 11–12.  Although this evidence is not overwhelming, in order to survive the Motion for Summary Judgment, it need only create a genuine issue of material fact on which a reasonable jury could disagree.

First, Woodway cites to email correspondence on April 21, 2015, wherein a Chapco employee emailed Weinstein and another Samsara stakeholder a summary of a discussion they had around that time.  <u>See</u> Woodway's MFSJ Mem. at 12 (citing to email from Aristi to Vernon and Weinstein ("Aristi Email") (Doc. No. 106-51) at 2–3).  The Aristi Email is formatted as nested bullet points.  <u>See</u> Aristi Email.  The email contains a description of three orders, one on April 22, one on April 24 or April 27, and one on May 1, 2015.  <u>See</u> <u>Id.</u>  Immediately following the third order, the email states "one way bearing at front[.]"  <u>See</u> <u>Id.</u>  Woodway argues that this final annotation is "[i]n

connection with th[e] third shipment." See Woodway's MFSJ Resp. at 12. The court acknowledges that one possible reading of the email would be to interpret "one way bearing at front" to refer to all three shipments because that final annotation is at the same level of indentation as the bullets specifying the three shipment orders. In that case, the Aristi Email would not support a claim of infringement. However, another possible reading of the email is to interpret, as Woodway does, that the annotation refers only to the shipment closest in proximity to the annotation, in which case the first two orders shipped infringing treadmills. A reasonable jury could disagree as to the interpretation of the email and, combined with the second piece of evidence below, the email creates a genuine issue of material fact.

As a second piece of evidence Woodway cites to the testimony of Jeremiah Rabe ("Rabe"), a Chapco engineer who testified that the plaintiffs did not modify the location of the safety device on any already-existing-original TrueForm Runner units that had already been produced. See Woodway's MFSJ Resp. at 12 (citing Rabe Dep. (Doc. 106-1) at 47:8-24). Rabe first testified that, at the time of the redesign, "we only built a treadmill at a time then, so there were not treadmills assembled ready to leave." Rabe Dep. at 47:16-18. He then qualified that statement in response to Woodway's further questioning by stating, "If there were [any treadmills in inventory], it was a very low quantity." See Rabe Dep. at 47:23-24. This statement allows for the possibility that some infringing treadmills already existed in the inventory at the time the patent was issued. This evidence, in conjunction with the Aristi Email, creates a genuine issue of material fact as to whether the plaintiffs have made, sold, or offered to sell products which infringe the '169 Patent after it issued.

As such, the Plaintiffs' Motion for Summary Judgment of non-infringement of the '169 patent (the plaintiffs' Count I and Woodway's Counterclaim I) is **DENIED**.

D.    Invalidity of the '169 and '580 Patents

The plaintiffs and Woodway cross-move for Summary Judgment as to the issue of the validity of the utility patents.  See Pls.' MFSJ Mem. at 21–37; Woodway's MFSJ Mem. at 30-39.  The plaintiffs assert that the Asserted Claims of both patents are invalid because they are rendered obvious by Socwell combined with Chickering, Magid and/or Schmidt.  See Pls.' MFSJ Mem. at 27-35.  Woodway moves for summary judgment of validity, arguing, inter alia, that: (1) Claim 11-13 of the '169 Patent and all Asserted Claims of the '580 Patent are not anticipated by Socwell, see Woodway's MFSJ Mem. at 28-32; (2) all Asserted Claims are not anticipated by Schmidt, see id. at 32-36; (3) plaintiffs do not have sufficient evidence to support their obviousness theories, see id. at 36-37; and (4) the plaintiffs have no evidence to support a claim of indefiniteness, lack of written description, or lack of enablement, see id. at 37-39.  Before the court can address the underlying invalidity arguments, the court must first address Woodway's two Motions to Strike, both of which concern expert opinions related to the plaintiffs' invalidity theories and proof.

1.    Motion to Strike Portions of Dr. Giachetti's Opening Expert Report

Woodway has moved to strike portions of Dr. Giachetti's Opening Expert Report ("Dr. Giachetti's Report") on two bases: Woodway first argues that Dr. Giachetti's Report disclosed new invalidity theories for the first time, and next argues that certain of his opinions are unsupported and therefore inadmissible.  See Mot. to Strike Report Mem.  Courts in this District have held that, in the summary judgment context, a separate motion to strike is unnecessary—where a party believes that asserted facts

are not supported by the evidence, or wishes to object that a fact cannot be presented in a form that would be admissible in evidence, the party should make those arguments in its summary judgment briefing, not as motions to strike. See <u>Tzanetis v. Weinstein & Riley, P.S.</u>, No. 3:09-CV-413(DJS), 2010 WL 3925250, at *2 (D. Conn. Sept 28, 2010). Indeed, this idea is specifically stated in the notes to Rule 56, and such motions are prohibited by the District of Connecticut's Local Rules, as amended after the filing of Woodway's Motion. See Fed. R. Civ. P. 56 Advisory Committee's Note ("[T]here is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial."); D. Conn. L. Civ. R. 56(a)4 (May 4, 2017) ("Motions to strike (a) statements made in a Rule 56(a) statement or (b) the supporting evidence are prohibited."). Because Woodway's Motion to Strike the Opening Expert Report of Dr. Robert Giachetti re: Invalidity is procedurally improper, it is **DENIED**.

However, to the extent that the Motion to Strike contains arguments regarding the admissibility of the plaintiffs' evidence incorporated by reference in Woodway's Motion for Summary Judgment and its Response to the Plaintiffs' Motion for Summary Judgment, the court will consider the arguments presented therein. See Woodway's MFSJ Resp. at 25.

a. <u>Dr. Giachetti's Schmidt Opinions</u>

The court is persuaded to not consider Dr. Giachetti's opinions regarding Schmidt in deciding the Motions for Summary Judgment. Rule 37 provides the court with instruction on what it should do when a party fails to provide information as required by a court order: in that circumstance "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless

the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts considering whether to exclude testimony have looked to the following factors: (1) the party's explanation for its failure to comply with the discovery order; (2) the importance of the testimony of the witness to be excluded; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. See Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988); Softel, Inc. v. Dragon Medical and Scientific Comm'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997) (utilizing the Outley factors to review a district court's decision to exclude expert testimony).

On June 22, 2016, the court modified the Scheduling Order such that the plaintiffs' supplemental preliminary invalidity disclosures were due on August 8, 2016. See Minute Entry, June 22, 2016 (Doc. No. 51). Additionally, the court set December 30 as the close of fact discovery, with expert disclosures due by March 2, 2017. It was in this March disclosure that the plaintiffs, in Dr. Giachetti's Report, first disclosed its invalidity theories regarding U.S. Patent No. 1,211,765 ("Schmidt"), either alone or in combination with U.S. Patent No. 3,637,206 ("Chickering"), U.S. Patent No. 5,538,489 ("Magid"), or U.S. Patent No. 641,424 ("Ziebell") as to the '169 Patent, or the combination of Schmidt with Ziebell for the '580 Patent. See Mot. to Strike Report Mem. at 4. Woodway argues that these new invalidity theories are untimely. Id.

The plaintiffs respond that Dr. Giachetti's Report was served on March 2, and therefore was in compliance with the court's Amended Scheduling Order. See Pls.'s Opp. to Def.'s Mot. to Strike Portions of the Opening Expert Report ("Mot. to Strike Report Opp.") (Doc. No. 99) at 3. This argument misunderstands the purpose of the

invalidity contentions. Although invalidity defenses based on prior art must be asserted in detail at least thirty days before trial, 35 U.S.C. § 282, some courts order invalidity contentions to be disclosed at an earlier date. See Convolve, Inc. v. Compaq Computer Corp., 643 F. Supp. 2d 336, 340 (S.D.N.Y. 2008) (explaining that, although leave to amend discovery disclosures is normally freely given, "a more conservative approach must be applied in patent cases to prevent the shifting sands approach . . . .") (internal quotations omitted). Invalidity contentions "require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands approach to claim construction." See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006) (discussing invalidity and infringement contentions under the local patent rules of the Northern District of California) (internal quotations omitted). Even though this District does not have a specific local patent rule, the court's Scheduling Order clearly required the use of infringement and invalidity contentions, see Scheduling Order (Doc. No. 40); Order Modifying Scheduling Order (Doc. No. 51), and the attempt to use new theories, absent a request to amend, violates the court's Order.

Here, the plaintiffs have offered no explanation for why they failed to move to amend their invalidity contentions, arguing instead that the expert disclosures and the invalidity contentions were separate deliverables, and as such Dr. Giachetti's expert testimony should not be limited to the contentions served earlier in the trial. See Mot. to Strike Report Opp. at 4. The fact that the expert report was due on a different due date than the invalidity contentions does not render them independent from each other, as plaintiffs assert. Instead, the invalidity contentions offer the patent holder a preview of the theories that may be brought against the patent, while the expert report offers the

proof and evidence to support those theories.  See <u>Fenner Investments, Ltd. v. Hewlett-Packard Co.</u>, Civ. No. 6:09-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010) (explaining in the related context of infringement contentions that the contentions provide notice without needing to disclose specific evidence, whereas the expert reports must include the basis and data which supports the opinions contained therein). Plaintiffs' argument boils down to the idea that the plaintiffs were unaware of what opinions their expert would have regarding the validity of the patents-in-suit until they received his report on March 2, 2017, and therefore a motion to amend their invalidity contentions would have been unnecessary and cumulative.  See Mot. to Strike Report Opp. at 4.  The idea that the plaintiffs were absolutely without notice as to the opinion of their own expert prior to the date his report was due strains credulity and undermines the spirit of discovery.  See <u>O2 Micro</u>, 467 F.3d at 1365 (describing the dual  purposes of discovery as allowing parties to develop facts to support their theories while also allowing the parties to pin down their opposition's theories).  Other courts have found expert reports that include opinions beyond the scope of the invalidity contentions to violate local rules and scheduling orders because, "[a]lthough an expert's report must offer evidence and proof not necessarily disclosed in a party's invalidity contentions, it may not present theories premised on combinations of prior art or references within the prior art not previously disclosed."  <u>Changzhou Kaidi Elec. Co., Ltd. v. Okin America, Inc.</u>, 112 F. Supp. 3d 330, 335 (D. Md. 2015).  Thus, the first <u>Outley</u> factor cuts against the plaintiffs, whose unpersuasive argument boils down to an assertion that they were permitted to file their expert report later than the invalidity contentions, and thus have done nothing wrong.

The second <u>Outley</u> factor, the importance of the testimony, favors the plaintiffs, as Dr. Giachetti's testimony is the primary route by which the plaintiffs can introduce their theories of invalidity based on these references. Specifically, throughout their Motion for Summary Judgment, the plaintiffs reference Dr. Giachetti's Declaration (discussed in greater detail below), which in turn must be supported by his Rule 26 Report. <u>See</u> Pls.' MFSJ Mem. at 32 (utilizing Dr. Giachetti's Declaration to show that Schmidt discloses the bearing rail limitation). Thus, Dr. Giachetti's Report is important for the plaintiffs to be able to offer evidence in support of these theories of invalidity, and therefore the second <u>Outley</u> factor favors the plaintiffs. It is important to note, however, that the improperly disclosed references are not the only references that the plaintiffs offer in support of their invalidity arguments and, as such, the court does not mean to overstate the importance of the specific portion of the challenged evidence, which only relates to some of Dr. Giachetti's opinions.

Next, the court considers the prejudice suffered by the party opposing the testimony—as a result of having to meet the testimony—points in favor of Woodway. Although the plaintiffs correctly point out that Woodway was able to depose Dr. Giachetti, and their expert, Dr. Kim Blair ("Dr. Blair"), was able to offer a rebuttal report that discussed the improperly disclosed opinions, this does not end the court's analysis under this factor. <u>See</u> Mot. to Strike Report Opp. at 5. Dr. Blair's ability to write a rebuttal report does not speak to the cogency of that report, and whether he could have prepared a more thorough analysis if he had been aware of the plaintiffs' theories at an earlier point. <u>See</u> Woodway's Reply in Supp. of its Mot. to Strike Portions of the Opening Expert Report at 3; <u>see also</u>, <u>Changzhou</u>, 112 F. Supp. 3d at 337 ("[S]ome

courts have concluded that the capacity of an opposing party's expert to respond to novel invalidity contentions is not sufficient to save those theories from exclusion.") (internal citations omitted). And Woodway's awareness of the existence of the Schmidt reference outside of the plaintiffs' invalidity theories is beside the point—it is of no moment that Woodway knew that Schmidt existed when it was unaware that plaintiffs planned to use it as part of their invalidity argument, and therefore unable to take full discovery regarding the plaintiffs' Schmidt theories. <u>See</u> Mot. to Strike Report Opp. at 5. All in all, it appears there has been prejudice to Woodway.

The plaintiffs also argue that Woodway has not suffered prejudice as evidenced by the fact that the Motion to Strike is the first they heard Woodway complain of the timeliness of the disclosure. <u>See</u> Mot. to Strike Report Opp. at 5. This argument makes little sense. The fact that Woodway did not let the plaintiffs' eleventh hour submission dissuade them from filing the best rebuttal report they could or deposing the plaintiffs' expert does not excuse the plaintiffs' behavior. Indeed, considering the expert report and dispositive motions deadlines, Woodway's Motion to Strike, which was filed alongside their dispositive motion and only two months after the untimely disclosure of the plaintiffs' new invalidity theories, constitutes a timely complaint.

Finally, the court must consider the availability of a continuance. Although this case has not been set for trial, discovery has closed and dispositive motions have been filed. This case is nearly two years old. Reopening discovery now would serve to unjustly postpone resolution of this matter. The court concludes that this factor points in favor of Woodway, because the question, for the purposes of this Ruling, is whether the court should consider the materials in connection with the cross Motions for Summary

Judgment. The court could not feasibly order a continuance as to the matter at hand without requiring a new round of briefing. Additionally, although it might be feasible to reopen discovery, it would lead to increased costs to both parties and come after the court had ruled on the dispositive motions, unnecessarily complicating the parties' scheduling and the presentation of issues at trial. Considering the effort that has clearly gone into the briefing on both sides and the court's consideration of that briefing, the court is unwilling to do that.

On the whole, the court is persuaded that the new Schmidt theories should not be considered in connection with the summary judgment motions, largely because of the lack of reasonable excuse for their late addition to plaintiffs' case. Here, it is clear plaintiffs were aware of the Schmidt patent, as they cited it in their Markman brief. See Pls.' Opening and Responsive Claim Construction Br. (Doc. No. 59) at 4–6, 27–30. Indeed, the plaintiffs were aware that Schmidt had been reviewed by the patent examiner, who had at least once rejected the application based on Schmidt. See id. at 5. Plaintiffs' unexplained failure to disclose a known piece of prior art as a basis for invalidity should not cause additional costs to Woodway, nor delay the resolution of this matter. Therefore, the court will not consider Dr. Giachetti's untimely arguments regarding Schmidt.

b.    Dr. Giachetti's Obviousness Opinions

Woodway also argues that Dr. Giachetti's opinions regarding obviousness should be excluded because they are based on a mistaken understanding of the relevant factors. See Mot. to Strike Report Mem. at 10-12. This portion of Woodway's argument is unpersuasive: it does not argue that Dr. Giachetti's Report was untimely, or otherwise is not based on proper techniques, but rather just that Woodway is unpersuaded by the

section of Dr. Giachetti's report that addresses motivations to combine. See id. at 11-12. As noted above, motions to strike are generally disfavored in connection with motions for summary judgment, because arguments like this do not assist the court in making its determination as to summary judgment. To the extent that the Motion directs the court not to consider arguments by Dr. Giachetti regarding motivation to combine, the court notes that, as is required by Rule 56, it will consider his report as evidence to the extent it is admissible. See Fed. R. Civ. P. 56(c)(2); O'Brien v. Wisniewski, Civ. No. 10-CV-120(CSH), 2012 WL 1118076, at *4 (D. Conn. Apr. 3, 2012) ("Courts within this District have explicitly denied motions to strike as unnecessary because courts review and rely only upon admissible evidence on summary judgment.").

      2.      Motion to Strike Portions of Dr. Giachetti's Declaration

Woodway also filed a Motion to Strike Portions of the Declaration of Dr. Giachetti on June 1, 2017. See Mot. to Strike Portions of the Decl. of Giachetti (Doc. No. 102). This Motion was filed after the change to the Local Rules which prohibited motions to strike in connection with summary judgment evidence, and therefore the procedural arguments raised by plaintiffs as to both Motions applies with greater force to this Motion. See supra at section IV.D.1. Woodway's argument that the Local Rule only applies to statements made in the Rule 56(a) statement or the supporting evidence ignores the cases in this District that have denied motions to strike affidavits and other supporting evidence as improper in the context of motions for summary judgment. See, e.g., Tzanetis v. Weinstein & Riley, P.S., 3:09CV413(DJS), 2010 WL 392520 (D. Conn. Sept. 28, 2010). Thus, Woodway's Motion to Strike Portions of the Declaration of Dr. Giachetti is **DENIED** for the same reason as it does the Motion to Strike his earlier report.

Still, the court will consider the arguments raised therein in connection with whether or not the evidence contained within the expert's Declaration would be admissible, and thus properly considered in the context of a Rule 56 motion. <u>See</u> Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); <u>id.</u> at (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Much as before, Woodway incorporates its Motion to Strike Portions of the Declaration of Dr. Giachetti into its briefing in opposition to the plaintiffs' Motions for Summary Judgment, and so the court will consider the arguments raised therein to determine whether or not the court may rely on the evidence complained of. <u>See</u> Woodway's MFSJ Resp. at 33.

Woodway argues that Giachetti's Declaration contains new opinions and new theories which were previously not included in Dr. Giachetti's Report, and as such are not now admissible under Rule 26(a). <u>See</u> Woodway's Mem. in Supp. of its Mot. to Strike Portions of the Decl. of Giachetti ("Mot. to Strike Decl. Mem.") (Doc. No. 103). Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires an expert to disclose, in a written report, "a complete statement of all opinions the witness will express and the basis and reasons for them." An expert is permitted to supplement his report, but only if he learns that the disclosure or response is incomplete or incorrect. Fed R. Civ. P. 26(e)(1)(A). Failure to provide information as required by Rule 26(a) and (e) will result in the party being disallowed from using that "information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1). "[E]xperts are not free to continually bolster, strength, or improve their reports by endlessly researching the issue they already opined upon, or to continually supplement their opinions." <u>Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.</u>, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011). The concern over untimely supplementation is particularly strong here, where the alleged new matters were only disclosed in connection with the plaintiffs' dispositive motion, after Dr. Giachetti had been deposed. <u>See</u> Mot. to Strike Decl. Mem. at 6.

The first question that Woodway's Motion raises is whether the materials disclosed in Dr. Giachetti's Declaration are new. Woodway argues that, of the 77 paragraphs in the Declaration, 24 are completely new and were not previously disclosed, and another 16 paragraphs contain some material not otherwise disclosed previously. <u>See</u> Mot. to Strike Decl. Mem. at 6. The plaintiffs respond that Dr. Giachetti's Report was timely and included citations to all of the same references as the Declaration. <u>See</u> Pls.' Opp. to Def.'s Mot. to Strike Portions of the Decl. of Giachetti ("Mot. to Strike Decl. Opp.") (Doc. No. 121) at 5-9. This argument misunderstands the expert disclosure rule: it does not call for merely a broad indication of the sources that the expert has reviewed, but rather must include "a <u>complete</u> statement of <u>all</u> opinions the witness will express. . . ." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). That Dr. Giachetti disclosed the evidence underlying the opinions contained in his Declaration provides no shelter from the argument that he did not disclose the opinions themselves.

The plaintiffs argue that Dr. Giachetti's Declaration's "Motivation to Combine" section is properly supported because the theories contained therein were made clear at Giachetti's deposition, and can otherwise be understood if the report is "read as a

whole." See Mot. to Strike Decl. Opp. at 9. That Dr. Giachetti disclosed new theories during his deposition does not remedy his failure to provide a written report that contains all of his opinions. See Fed. R. Civ. P. 26(a)(2)(B). Similarly, Dr. Giachetti's disclosure that there would be a motivation to combine generally does not support the specific and novel justifications for that motivation found within his Declaration. Compare Giachetti's Report (Doc. No. 103-3) at ¶¶ 145-148 (containing explicit theories to combine in order to combat friction and explaining that the use of a flywheel to maintain the directional movement of the belt has certain manufacturing downsides) with Decl. of Robert Giachetti (Doc. No. 88-2) at ¶¶ 73-77 (explaining that each piece of prior art referenced the concern of the belt moving in two directions and stating explicitly that a person of ordinary skill would want to combine the references to solve this problem, using a ratchet and pawl mechanism).

The court has reviewed the paragraphs which Woodway asserts contain new information and concludes that Dr. Giachetti's Declaration does include some new and previously undisclosed information, but substantially less than Woodway argues. Specifically, the court finds that only paragraphs 8.a, 8.c, 28, 30, 31, 32, 33, 34, the last sentence of paragraph 56, the last two sentences of paragraph 61, 72, 73, 74, 75, 76, and 77 are unsupported by Dr. Giachetti's Report. The rest of the paragraphs that Woodway alleges are new have support in the Report, including the instances where the Declaration makes more specific citations to the same materials as cited in the Report. See, e.g., Highlighted Decl. of Giachetti (Doc. 103-2) at ¶ 23 (arguing that the citation to Chickering, Col. 1, ll. 26-34 is improper).

Having determined that Dr. Giachetti's Declaration includes some new matters, the court must next determine whether exclusion is the proper sanction. Again, the Outley factors guide the court's decision. See Softel, Inc. v. Dragon Medical and Scientific Comm'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997). The first factor, the party's excuse for failure to comply with the discovery order, clearly cuts against the plaintiffs, who provide no excuse for including new theories in the Declaration. See Mot. to Strike Decl. Opp. at 11 (arguing that the disclosure does not violate the discovery order because it was filed alongside the summary judgment motion, which was filed on time). The second factor, the importance of the testimony of the precluded witness, cuts in favor of the plaintiffs, because it is clear that Dr. Giachetti's testimony is important to the plaintiffs' invalidity theories, although again, the court is only excluding some of his statements. The third factor, whether Woodway is prejudiced by the plaintiffs' late disclosure, cuts in favor of exclusion because the Declaration was offered after the deposition of Dr. Giachetti and rebuttal reports were due, and as such Woodway had no opportunity to meaningfully reply. That Woodway did not complain in the way that the plaintiffs would have preferred, see Mot. to Strike Decl. Opp. at 12, is not important—Woodway was not offered the opportunity to meaningfully rebut Dr. Giachetti's new opinions within the confines of the court's original Order. Finally, the fourth factor, the possibility of a continuance, also weighs against the plaintiffs, because a continuance at this point would unnecessarily prolong the summary judgment process and require an additional round of briefing. The Outley factors favor exclusion, and thus, the court will not consider the paragraphs containing new information in connection with the Motions for Summary Judgment. See Fed. R. Civ. P. 56(c)(2).

Having resolved the admissibility issues raised by the Motions to Strike, the court now turns to the substantive arguments raised by the parties regarding the validity of the patents in suit. The court will take up each argument in turn.

### 3. Obviousness

The court first takes up the obviousness arguments raised by both parties. Woodway argues that, because the court should strike Dr. Giachetti's opinion, the plaintiffs have not offered sufficient evidence on which a jury could find that the combinations of Schmidt and Chickering, Schmidt and Magid, or Schmidt and Ziebell render the asserted patents obvious by clear and convincing evidence. See Woodway's MFSJ Mem. at 36–37.

The plaintiffs argue that the patents are invalid because they are obvious in light of various combinations of prior art patents. See Pls.' MFSJ Mem. at 21–36. A patent is invalid if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Patents, once granted, are presumed valid and, as such, can only be found to be invalid by clear and convincing evidence. See TriMed, Inc. v. Stryker Corp., 608 F.3d 1333, 1340 (Fed. Cir. 2010). "The ultimate judgment of obviousness is a legal determination[,]" such that when "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 427 (2000). Additionally, the court must also consider objective evidence of nonobviousness in order to avoid slipping into using impermissible hindsight. Plantronics, Inc. v. Aliph, Inc., 724 F.3d

1343, 1354-55 (Fed. Cir. 2013). The court must consider "whether a skilled artisan would be motivated to combine certain prior art references, an issue that focuses heavily on the first and third [obviousness] factors." Id. at 1353.

The plaintiffs argue that all of the Asserted Claims are obvious in light of Socwell, combined with Chickering, Magid, and/or Schmidt. See Pls.' MFSJ Mem. at 27-36. It argues that a person having ordinary skill in the art would have been motivated to combine these references because the problem of curved manual treadmills running belts moving was well known, and placing a safety device was an obvious solution to that problem. See id. at 36-37. They argue that this solution does not require expert testimony because the motivation to combine may simply be a matter of common sense. See id. at 36 (citing Wyers v. Master Lock Co., 616 F.3d 1231, 1239-40 (Fed. Cir. 2010)).

Woodway argues that the plaintiffs have not articulated sufficient motivations to combine, because the plaintiffs only cite to the portions of Dr. Giachetti's Declaration that contain previously undisclosed motivation to combine opinions. See Woodway's MFSJ Resp. at 33. Because the court has determined that these opinions were not disclosed in Dr. Giachetti's Report, the court will not consider the arguments based on Dr. Giachetti's Declaration. See supra at section IV.D.2.

The plaintiffs otherwise rely on statements made by the inventors regarding their assessment of the risk of unexpected motion of the running belt and their solution of adding a one-way bearing. See Pls.' MFSJ Mem. at 36–37 (citing to Pls.' Rule 56(a)1 Statement ("Pls.' L.R. 56(a)1 Stmt.") (Doc. No. 90) at 123-133). These citations cannot establish that the problem was obvious—of course the inventors knew of the problem

and determined a solution, but considering the inventors' actions as evidence of obviousness would improperly use hindsight to inform the analysis.  See Insite Vision Inc. v. Sandoz, Inc., 783 F.3d 853, 859 (Fed. Cir. 2015) ("Defining the problem in terms of its solution reveals improper hindsight in the selection of the prior art relevant to obviousness.") (citing Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH, 139 F.3d 877, 881 (Fed. Cir. 1998)).  Thus, the court cannot conclude that the plaintiffs have shown, by clear and convincing evidence, that the patents were obvious in light of the prior art because they have not demonstrated that a person having ordinary skill in the art would be properly motivated to combine the disparate references.

However, the court cannot grant Woodway's Motion for Summary Judgment as to obviousness either.  Dr. Giachetti's Report does disclose a theory for a motivation to combine and, even without it, a reasonable jury could reasonably infer that the prior art disclosed a known problem, which could be solved by other prior art references with only the use of common sense guiding their combination.  See Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1328–29 (Fed. Cir. 2009) (explaining that common sense may "inform the analysis of obviousness if explained with sufficient reasoning," and "does not require a specific hint or suggestion in a particular reference[.]").  Indeed, expert opinions are often unnecessary "because the technology will be easily understandable without the need for expert explanatory testimony."  Id. at 1329.

The court also cannot make a determination of the validity of the patents where there exists a material dispute as to who qualifies as a person of ordinary skill in the art. See KSR, 550 U.S. at 427.  Plaintiffs describe the person of ordinary skill in the art to be "a mechanical engineer with at least one year of machine design experience related to

power transmission equipment and a demonstrated understanding of the biomechanics of exercise, including knowledge in the field of anthropometry."  Giachetti Decl. at ¶ 11. Woodway, by comparison, argues that a person of ordinary skill is a "person with a bachelor degree in mechanical engineering or at least two years of experience in the treadmill industry, including experience and knowledge of the design, construction, testing, and operation of the manual treadmill."  <u>See</u> Rebuttal Expert Report of Blair (Doc. No. 96-15) at ¶ 31.  The parties provide no justification for the court to adopt one of these views over the other.  Thus, there exists a genuine dispute as to the person of ordinary skill, a dispute whose resolution is best left to the fact finder.  <u>See</u> <u>Graham v. John Deer Co.</u>, 383 U.S. 1, 17 (1966) (discussing that, while patent validity is a question of law, it relies on factual inquires including "the level of ordinary skill in the pertinent art[.]")

Finally, the court must address Woodway's argument that the plaintiffs are without clear and convincing evidence as to the plaintiffs' obviousness theories as to the previously undisclosed Schmidt disclosures.  <u>See</u> Woodway's MFSJ Mem. at 36-37. Because the court has determined that the plaintiffs' failure to properly identify its theories of obviousness results in the court not considering its expert's report regarding those theories, the plaintiffs have not produced sufficient evidence to allow a reasonable jury to find by clear and convincing evidence that the patent is obvious in light of Schmidt and Chickering, Schmidt and Magid, or Schmidt and Zlebell.  <u>See</u> <u>supra</u> at section IV.D.1.  Thus, Woodway's Motion for Summary Judgment on the plaintiffs' invalidity claims (Counts II and IV of their Amended Complaint) is **GRANTED** insofar as plaintiffs advance a theory of obviousness based on these combinations.

For the foregoing reasons, the plaintiffs' Motion for Summary Judgment as to their Counts II and IV under a theory of obviousness is **DENIED**. Woodway's Motion for Summary Judgment as to the same counts is **GRANTED** to the extent that plaintiffs allege a theory of obviousness based on the combinations of Schmidt and Chickering, Schmidt and Magid, or Schmidt and ZIebell is granted.

4.     Anticipation

Woodway also moves for summary judgment on the plaintiffs' invalidity claims (Counts II and IV of the plaintiffs' Amended Complaint) on the basis that the patents-in-suit are not anticipated by Socwell or Schmidt.  <u>See</u> Woodway's MFSJ Mem. at 28–26. A claim is anticipated when each element of that claim is disclosed in a single prior art reference, and the claimed arrangement of those elements is also disclosed in the same reference.  <u>See</u> <u>Therasense, Inc. v. Becton, Dickinson and Co.</u>, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010).

a.     <u>Socwell</u>

Woodway argues that Dr. Giachetti never provided a disclosure of a safety device in Socwell and, therefore, plaintiffs cannot show by clear and convincing evidence that Socwell anticipates the Asserted Claims because they have no evidence that it contains every element of the Asserted Claims.  <u>See</u> Woodway's MFSJ Mem. at 29.  Woodway points out that Dr. Giachetti's Report discloses that there is a safety device conclusorily, without referencing a component or a portion of the patent that corresponds to that component.  <u>See</u> <u>id.</u>

Having reviewed the Report, the court concludes that Woodway is correct.  Dr. Giachetti disclosed no device he believed was a safety device, and his supplemental statements at his deposition and in Dr. Giachetti's Declaration cited by the plaintiffs

cannot alone remedy the deficient written expert report.  <u>See</u> <u>supra</u> at section IV.D.1.

Because the plaintiffs have failed to timely provide disclosure of their anticipation

theories under Socwell, Woodway's Motion for Summary Judgment of the plaintiffs'

Counts II and IV is **GRANTED** to the extent that plaintiffs advance a theory of

anticipation by Socwell.

b.    <u>Schmidt</u>

Woodway also argues that the plaintiffs cannot offer clear and convincing

evidence that Schmidt anticipates the Asserted Claims.  <u>See</u> Woodway's MFSJ Mem. at

33-36.  Because the court has determined that the plaintiffs' untimely disclosure of their

theories of invalidity based on Schmidt should lead to the court not considering that

portion of Dr. Giachetti's Report, the plaintiffs are left without clear and convincing

evidence that Schmidt discloses all elements of the Asserted Claims.  <u>See</u> <u>supra</u> at

section IV.D.1.  Thus, Woodway's Motion for Summary Judgment on the plaintiffs'

Counts II and IV is **GRANTED** to the extent that those counts rely on a theory of

anticipation by Schmidt.

5.    Indefiniteness, Written Description, and Enablement

Woodway moves for summary judgment as to theories of invalidity under section

112 of title 35 of the United States Code.  <u>See</u> Woodway's MFSJ Mem. at 37-38.

Specifically, Woodway argues that the plaintiffs do not include any details or evidence of

their theory of invalidity under section 112 in their contentions or interrogatory

responses, nor did Dr. Giachetti discuss section 112 as applied to the patents in his

expert report.  <u>See</u> <u>id.</u>  The plaintiffs' responsive brief does not argue otherwise.  <u>See</u>

Pls.' MFSJ Opp.  The court understands the plaintiffs' failure to respond to Woodway's

argument to mean that the plaintiffs have abandoned their arguments under section

40

112.  See Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014).  Therefore, the

court grants Woodway's Motion for Summary Judgment on the plaintiffs' Counts II and

IV **is GRANTED** as to theories under section 112.

      E.     Non-Infringement of the '866 Patent

The plaintiffs also allege that Woodway cannot show infringement of Woodway's

'866 design patent, which covers the side covers of the treadmill.  See Pls.' MFSJ Mem.

at 17-19; Woodway's MFSJ Opp. at 19–22.  The sole test for determining whether a

design patent has been infringed is the "ordinary observer" test.  Egyptian goddess, Inc.

v. Swisa, Inc., 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc).  This test requires an

analysis of whether, "in the eye of an ordinary observer, giving such attention as a

purchaser usually gives . . . the resemblance is such as to deceive such an observer,

inducing him to purchase one supposing it to be the other."  Ethicon Endo-Surgery, Inc.

v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015) (quoting Egyptian Goddess, 543

F.3d at 670).  The infringement analysis looks to determine whether "the deception that

arises is a result of the similarities in the overall design, not of similarities in ornamental

features in isolation."  Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1295 (Fed.

Cir. 2010) (citing Amini Innov. Ocrp. V. Anthony Cal., Inc., 439 F.3d 1365, 1372 (Fed

Cir. 2006)).

Looking to the Accused Products, and comparing them to the claimed design, the

court cannot say that, as a matter of law, no ordinary observer could confuse the

Accused Products for the patented design.  The '866 patent covers ornamental side

covers on a treadmill, which the Accused Products unquestionably have:



Woodway's MFSJ Resp. at 21.

The plaintiffs argue that the patented design has a 90 degree mounting point which is not present in the Accused Products:[7]



Pls.' MFSJ Mem. at 19. Looking to the design as a whole, the court cannot say that this difference alone would prevent the ordinary user from being deceived.

Plaintiffs also argue that, to the extent the side covers look similar, it is driven by utility, not design, because side covers are safety devices. See id. That the side covers have utility is not the same as saying that the design of the side covers has utility. The

---

[7] The court notes that the original document of the Ruling in color shows two red circles at the base of the structure, which refer to the location of the 90 degree mounting points.

plaintiffs offer no argument that the side covers' design itself has utility, and so the court cannot say that the similarities are due to the utility of the design.

For the reasons stated above, the plaintiffs' Motion for Summary Judgment of non-infringement of the '899 patent (as to Woodway's Counterclaim III) is **DENIED**.

### F.    Lanham Act and CUTPA Violation

Finally, the plaintiffs move for summary judgment on Woodway's claims under the Lanham Act (Woodway's Counterclaim VI) and CUTPA (Woodway's Counterclaim VII).  See Pls.' MFSJ Mem. at 37.  Woodway indicated in its Response to the plaintiffs' Motion for Summary Judgment that it was willing to withdraw Counnterclaims VI and VII if the plaintiffs removed the offending video from their websites and took the necessary steps to remove it from Youtube.  See Woodway's MFSJ Resp. at 39.  Woodway advised the court on September 25, 2017, that plaintiffs had removed the video and that it was accordingly withdrawing its Lanham Act and CUTPA claims, which the court so orders.  See Letter from Kadie Jelenchick (Doc. No. 139).

## V.    CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment (Doc. No. 88) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the court grants the plaintiffs' Motion as to Woodway's Counterclaims I–III insofar as Woodway claims indirect infringement by Chapco.  The plaintiffs' Motion is denied in all other respects. Woodway's Motion for Summary Judgment (Doc. No. 94) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, regarding Woodway's Counterclaim II, the Motion is granted against Samsara as to infringement of Claims 1, 6, 19, and 20 of the '580 patent by the Accused Products.  Regarding the plaintiffs' Counts II and IV for invalidity, the Motion is granted as to theories of obviousness based on the combinations of

Schmidt previously undisclosed and theories of anticipation based on Socwell and based on Schmidt, and denied as to other theories of obviousness.  Woodway has withdrawn Counterclaim VI, alleging infringement of the '866 Patent, which the court **SO ORDERS**.  Finally, both of Woodway's Motions to Strike are **DENIED**, as they are improper to submit in conjunction with summary judgment motions.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 26th of September, 2017.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge