**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHAPCO, INC. and SAMSARA | : | |
| FITNESS, LLC | : | |
| Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:15-CV-1665 (JCH) |
| v. | : | |
| | : | |
| WOODWAY USA, INC. | : | JULY 24, 2018 |
| Defendant. | : | |

**RULING RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY (DOC. NO. 252) AND WOODWAY'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT (DOC. NO. 255)**

## I. INTRODUCTION

Pending before the court are the parties' Cross-Motions for Summary Judgment regarding the recently introduced Generation III TrueForm Runner treadmill (the "Gen. III"). See Plaintiffs' Motion for Summary Judgment of Non-Infringement and Invalidity ("Plaintiffs' MFSJ") (Doc. No. 252); Woodway's Motion for Summary Judgment of Infringement ("Woodway's MFSJ") (Doc. No. 255).

For the reasons stated below, both Motions are **DENIED**.

## II. BACKGROUND

On December 29, 2015, the plaintiffs, Chapco, Inc. ("Chapco") and Samsara Fitness, LLC ("Samsara"), filed the Amended Complaint against the defendant, Woodway USA, Inc. ("Woodway"). See Amended Complaint ("Am. Compl.") (Doc. No. 27). The Amended Complaint seeks, inter alia, a declaratory judgment that the TrueForm Runner treadmill (the "Gen. II") does not infringe Woodway's U.S. Patent No.

9,039,580 (the "'580 Patent") and that the '580 Patent is invalid.[1]  See id. at ¶¶ 33–40. Woodway filed its Answer to the Amended Complaint on July 25, 2016, asserting a number of counterclaims including, inter alia, infringement of claims 1, 4–6, 10–14, 18–20, and 25 of the '580 Patent.  See Answer, Affirmative Defenses, and Counterclaims ("Answer") (Doc. No. 54) at ¶¶ 18–26.

On December 8, 2016, after briefing and oral argument, the court issued a Claim Construction Ruling, construing the 9 terms identified by the parties to be in dispute. See Claim Construction Ruling (Doc. No. 76).  These 9 terms included 3 terms that were used in claim 25 of the '580 patent: frame, bearing rail, and running belt.  See Woodway's Local Rule 56(a)(1) Statement of Facts ("Woodway's L.R.56(a)(1)") (Doc. No. 257, Ex. B ("'580 Patent") (Doc. No. 257-2) at Col. 36, L. 1–17.  Neither party asked the court to construe any other terms.

The deadline for dispositive motions was May 1, 2017.  See Minute Entry (Doc. No. 72).  The plaintiffs and Woodway both filed Cross-Motions for Summary Judgment on May 1, 2017.  See Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Original MFSJ") (Doc. No. 88); Woodway's Motion for Summary Judgment ("Woodway's Original MFSJ") (Doc. No. 94).  The court issued its Ruling on September 26, 2017.  See Ruling on Plaintiffs' Motion for Summary Judgment and Woodway's Motion for Summary Judgment ("SJ Ruling") (Doc. No. 144).

As to infringement of the '580 Patent, Woodway moved for summary judgment against Samsara that the Gen. II infringes claims 1, 6, 19, and 20 of the '580 Patent.

---

[1] Although the Amended Complaint and the Answer assert a number of other claims and counterclaims, the court focuses here only on those relevant to the '580 Patent.

See Memorandum in Support of Woodway's Original MFSJ ("Woodway's Original Mem. in Supp.") (Doc. No. 97) at 20–28. Woodway did not move for summary judgment as to claim 25. Chapco and Samsara moved for summary judgment that the Gen. II does not infringe any of the claims of the '580 Patent, including claim 25. See Memorandum in Support of Plaintiffs' Original MFSJ ("Plaintiffs' Original Mem. in Supp.") (Doc. No. 88-1) at 8–17 (arguing that the accused products do not infringe the "Asserted Claims"); id. at 1 (defining the "Asserted Claims" as claims 11–16 of the '169 Patent and claims 1, 4–6, 10–14, 18–20, and 25 of the '580 Patent). The court granted Woodway's Motion as to infringement of claims 1, 6, 19, and 20 of the '580 Patent and denied the plaintiffs' Motion as to noninfringement of the Asserted Claims. See SJ Ruling at 19.

As to invalidity of the '580 Patent, Woodway moved for summary judgment that the '580 Patent was not anticipated by Socwell or Schmidt; made obvious by combinations of Schmidt and Chickering, Schmidt and Magid, or Schmidt and Ziebell; or invalid under section 112 of title 35 of the United States Code for indefiniteness, lack of written description, or lack of enablement. See Woodway's Original Mem. in Supp. at 30–39. Chapco and Samsara moved for summary judgment that the "Asserted Claims," including claim 25, are invalid because they are rendered obvious by Socwell either alone or in combination with Chickering, Magid, and/or Schmidt. See Plaintiffs' Original Mem. in Supp. at 27–37.

Because the court declined to consider the plaintiffs' expert report to the extent the opinion was not disclosed in the plaintiffs' Invalidity Contentions, the court granted summary judgment for Woodway as to obviousness based on combinations of Schmidt and Chickering, Schmidt and Magid, and Schmidt and Ziebell. See SJ Ruling at 38–39.

3

On all other combinations of obviousness raised, however, the court denied summary judgment because it found that there was a genuine issue of material fact as to what a person of ordinary skill in the art would be, and whether such a person would have had a motivation to combine.  See id. at 35–39.  The court also granted summary judgment for Woodway on the issues of anticipation by Socwell and Schmidt, indefiniteness, lack of written description, and enablement.  See id. at 39–41.

Finally, on the issue of Chapco's liability, the plaintiffs moved for summary judgment that Chapco is not liable for infringement of the patents under a theory of direct infringement, alter ego, or indirect infringement.  See Plaintiffs' Original Mem. in Supp. at 4–8.  The court granted summary judgment for the plaintiffs on the theory of indirect infringement because Woodway failed to disclose that theory in its Infringement Contentions.  See SJ Ruling at 8–10.  The court denied summary judgment on the theories of direct infringement and alter ego, however, because it found a genuine issue of material fact existed as to whether Chapco makes the products and as to whether Chapco and Samsara are alter egos of Weinstein.  See id. at 6–8, 10–12.

With trial set to begin on May 14, 2018, the court held three Pretrial Conferences on April 10, 2018, April 12, 2018, and April 30, 2018.  In preparing the case for trial, Woodway dismissed with prejudice a number of its counterclaims, including its claim that the Gen. II infringes claims 4–5, 10–14, 18, and 25 of the '580 Patent.  See Motion to Dismiss (Doc. No. 244) at 2.

While the parties were preparing for trial, Chapco and Samsara had redesigned the Gen. II into a new Generation III model ("the Gen. III") that they intended to introduce on the market on May 15, 2018, in the middle of trial.  See Transcript, April

12, 2018, Pretrial Conference ("4/12/18 Tr.") (Doc. No. 238) at 279. Based on its expert's evaluation of the Gen. III, Woodway asserted that the Gen. III infringes claim 25 of the '580 Patent and sought leave to add the issue of the Gen. III's infringement to the current litigation. See id. at 279–80. Claim 25 is a method claim. See '580 Patent at Col. 36, L. 1–17. Although Woodway withdrew its claim for infringement of claim 25 as to the Gen. II, it argued that claim 25 had been present in the case from the beginning and was properly alleged in the Amended Complaint. See id. at 280–81. The plaintiffs stated a preference for excluding the Gen. III from this case and instead resolving it in a separate lawsuit, but recognized that permitting Woodway to try the Gen. III along with the Gen. II was within the court's discretion. See id. at 283–84, 290. Partly as a result of unrelated scheduling conflicts that required the case to be continued until October, the court permitted the parties to add Gen. III to the current case. See Transcript, April 30, 2018, Pretrial Conference ("4/30/18 Tr.") (Doc. No. 247) at 367–68.

The parties agree that "[t]he only changes made between the Gen II TrueForm Runner treadmill and the Gen III relate to the wheels' location when the treadmill is in use, and the rear shaft assembly and its attachment to the frame." Woodway's L.R.56(a)(1) at ¶ 1; Plaintiffs' Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("Plaintiffs' L.R.56(a)(2)") (Doc. No. 265) at Resp. No. 1 (admitting the above statement from Woodway's Local Rule 56(a)(1) Statement of Facts). The parties further agree that "[c]laim 25 of the '580 patent does not require the elements of 'wheels' or a 'rear shaft.'" Woodway's L.R.56(a)(1) at ¶ 2; Plaintiffs' L.R.56(a)(2) at Resp. No. 2 (also admitting the above statement).

## III.   LEGAL STANDARD

A motion for summary judgment may be granted only where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Redd v. N. Y. Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012). The moving party bears the burden of "showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (internal quotation marks and citations omitted). "Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 Fed. App'x 52, 53 (2d Cir. 2011).

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc., 716 F.3d 302, 312 (2d Cir. 2013).

> The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists. . . . Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit, for the court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe.

Rogoz v. City of Hartford, 796 F.3d 236, 245–46 (2d Cir. 2015) (internal quotation marks, citation, and emphasis omitted).

## IV.    DISCUSSION

Woodway seeks a summary judgment that "the <u>assembly</u> of the recently available Gen III TrueForm Runner treadmill literally infringes claim 25 of the '580 patent."  Memorandum in Support of Woodway's MFSJ ("Woodway's Mem. in Supp.") (Doc. No. 258) at 2 (emphasis in original).  Woodway does not seek a summary judgment as to whether either plaintiff is responsible for the infringement.  <u>See</u> <u>id.</u> at 29–30.

Chapco and Samsara seek a summary judgment of non-infringement, arguing that neither party performs all the steps of claim 25 and that Woodway has not pled a theory of joint infringement.  <u>See</u> Memorandum in Support of Plaintiffs' MFSJ ("Plaintiffs' Mem. in Supp.") (Doc. No. 253) at 1.  Chapco and Samsara also seek a summary judgment that claim 25 is invalid due to obviousness.  <u>See</u> <u>id.</u>

### A.    Successive Summary Judgments

"[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions."  <u>Grabin v. Marymount Manhattan Coll.</u>, 659 Fed. App'x 7, 8 (2d Cir. 2016) (quoting <u>Sira v. Morton</u>, 380 F.3d 57, 68 (2d Cir. 2004)).  However, "successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion."  <u>Brown v. City of Syracuse</u>, 673 F.3d 141, 147 n.2 (2d Cir. 2012); <u>see also</u> <u>Ramos v. SimplexGrinnell LP</u>, No. 07-CV-981 SMG, 2011 WL 4710814, at *2 (E.D.N.Y. Oct. 4, 2011) (stating that "[c]ourts are more likely to find a successive motion appropriate when it is supported by additional facts that were not available at the time of the first motion"); <u>Singleton v. Grade A Mkt., Inc.</u>, No. 08-CV-1385 (JCH), 2009 WL 10689210, at *2 (D. Conn. Sept. 21, 2009) ("In the absence of a good reason to exercise its discretion and entertain a successive

7

summary judgment motion, a court ought not allow litigation to be conducted in piecemeal fashion.").

In this case, the court permitted the successive Cross-Motions for Summary Judgment because the introduction of the Gen. III into the case created the potential for additional discovery and new facts that were not considered in the original Cross-Motions for Summary Judgment.[2]  The purpose of permitting the successive Motions was not to give the parties a second opportunity to raise arguments that could have been raised at the original summary judgment stage, but rather to allow the parties to address issues raised only by the Gen. III and that were not present with the Gen. II. None of the parties has done that here, as all of the arguments raised now were available and equally applicable to the Gen. II at the time of the court's prior Ruling on Summary Judgment.

Indeed, each side recognizes this fault in the other's Motion and asks the court to preclude the other from making arguments that could have been raised at an earlier stage in the litigation.  See, e.g., Woodway's Memorandum in Opposition to Plaintiffs' MFSJ ("Woodway's Mem. in Opp.") (Doc. No. 268) at 11–18 (arguing that Chapco and Samsara should not be allowed to argue for summary judgment on invalidity based on new obviousness combinations that could have been brought in their first Motion for Summary Judgment); Woodway's Mem. in Supp. at 5–9 (arguing that none of the changes from the Gen. II to the Gen. III are relevant to claim 25, so all of the plaintiffs' arguments for non-infringement of claim 25 could have been made as to the Gen. II at

_____

[2] The court notes that it was initially not inclined to consider a successive summary judgment motion, see 4/12/18 Tr. at 361–65, but agreed to do so as a result of the continued trial date, see 4/30/18 Tr. at 372–74.

the time of the first summary judgment); Memorandum in Opposition to Woodway's MFSJ ("Plaintiffs' Mem. in Opp.") (Doc. No. 264) at 1–6 (arguing that Woodway's Infringement Contentions and expert report never argued that assembly satisfied the limitations of claim 25 as to the Gen. II, so it should not now be allowed to advance that new theory as to the Gen. III); Plaintiffs' Mem. in Supp. at 12–15 (arguing the same for Woodway's theory of divided infringement).  Ironically, each side seeks to preclude the other from raising arguments that could have been raised previously, while at the same time failing to see the implications of such a principle for its own arguments.

Because the parties' arguments all "could have been raised in the first motion" regarding the Gen. II, see Brown, 673 F.3d at 147, the court declines to exercise its discretion to entertain such arguments in either successive Motion for Summary Judgment now.  While it is true that additional discovery was conducted regarding the Gen. III, none of the arguments advanced by the parties are "supported by additional facts that were not available at the time of the motion."  See Ramos, 2011 WL 4710814, at *2.  As Woodway notes, the changes made from the Gen. II to the Gen. III are irrelevant to claim 25.  See Woodway's Mem. in Opp. at 14–15; Woodway's Mem. in Supp. at 8–9.  This is true, not only for the plaintiffs' arguments for invalidity and non-infringement, as Woodway points out, but also to Woodway's own arguments for infringement.  The court briefly addresses the impropriety of each party's arguments for summary judgment.

As to the plaintiffs' Motion for Summary Judgment on invalidity, the court agrees with Woodway that the addition of the Gen. III to the case is immaterial to the validity or invalidity of claim 25.  See Woodway's Mem. in Opp. at 11–18.  In determining the

validity of a patent on a challenge of obviousness, the court must "compare the prior art to claims as one of ordinary skill of art at the time of the invention would have done." National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd., 357 F.3d 1319, 1334 (Fed. Cir. 2004). "[T]his legal determination is to be made on the basis of the following underlying findings of fact: '(1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness.'" Id. (quoting Riverwood Int'l Corp. v. Mead Corp., 212 F.3d 1365, 1366 (Fed. Cir. 2000)). Nothing in the analysis requires the court to consider at all the product accused of infringement. Therefore, any invalidity argument now raised in the plaintiffs' Motion for Summary Judgment could have been raised in their original Motion for Summary Judgment.

Indeed, the plaintiffs did move for summary judgment of invalidity in the first summary judgment. See Plaintiffs' Original Mem. in Supp. at 27–37. The plaintiffs' original Motion encompassed all "Asserted Claims," including claim 25 of the '580 Patent. See id. The plaintiffs now attempt to argue that the court's Ruling on Summary Judgment did not reach all of the invalidity references specific to claim 25. See Plaintiffs' Mem. in Supp. at 15. The court, however, ruled on all of the invalidity references that were raised in the plaintiffs' original Motion, denying the plaintiffs' request for summary judgment. See SJ Ruling at 35–39. To the extent that the plaintiffs' Motion now re-raises the same obviousness combinations, the court declines to reconsider or revise its prior Ruling. See Plaintiffs' Mem. in Supp. at 15 (arguing that "the Court has discretion to revise any ruling before entry of judgment"). To the extent that the plaintiffs' Motion raises new obviousness combinations that were not previously

raised, the court considers them procedurally improper because they could have been raised in the first Motion. The court therefore declines to consider them on the merits. The court agrees with Woodway that the plaintiffs may present timely disclosed obviousness combinations at trial,[3] see Woodway's Mem. in Opp. at 13, but are not entitled to summary judgment on them now.

As to the plaintiffs' Motion for Summary Judgment on noninfringement, the court also agrees with Woodway that all of the arguments raised by the plaintiffs now regarding the Gen. III were available and equally applicable to the Gen. II at the time of the first summary judgment. See Woodway's Mem. in Supp. at 5–9; Woodway's Mem. in Opp. at 11–15. The Gen. III differs from the Gen. II with respect to the location of the wheels and the absence of the rear shaft. See Woodway's L.R.56(a)(1) at ¶ 1; Plaintiffs' L.R.56(a)(2) at Resp. No. 1. Neither the wheels nor the rear shaft is mentioned in claim 25 or relevant to any of the plaintiffs' arguments for summary judgment. See Woodway's L.R.56(a)(1) at ¶ 2; Plaintiffs' L.R.56(a)(2) at Resp. No. 2. Therefore, there is no reason that these arguments could not have been raised as to the Gen. II at the prior summary judgment. That the plaintiffs chose not to raise the arguments earlier does not require the court to consider them belatedly now.

The court notes, however, that Woodway mischaracterizes the import of the plaintiffs' failure to raise the arguments at the prior summary judgment. Woodway argues that, because the only arguments plaintiffs made previously regarding claim 25

---

[3] The plaintiffs may not, however, present combinations based on Schmidt and Chickering, Schmidt and Magid, or Schmidt and Ziebell. The court has granted summary judgment for Woodway as to obviousness based on these combinations in its prior Ruling on Summary Judgment. See SJ Ruling at 38–39.

were to the frame and the bearing rail, the plaintiffs conceded that all other limitations were satisfied and that "the Gen II TrueForm Runner would infringe as a matter of law if the Court determined that it includes the 'frame' and 'bearing rail' elements." Woodway's Mem. in Supp. at 7. Woodway quotes this court as saying, "[T]he court concludes that the evidence supports a finding that, if the components identified by Woodway to be the 'frame' and 'bearing rail' satisfy the limitations as defined by the court's Claim Construction Ruling, then a judgment of infringement as to the Accused Products should enter." Id. at 7–8 (quoting SJ Ruling at 15). The court's statement was made, however, in the context of evaluating Woodway's Motion for Summary Judgment, which included only claims 1, 6, 19, and 20, not claim 25. See SJ Ruling at 14. Therefore, Chapco and Samsara were not required to defend against claim 25 at the prior summary judgment.

Chapco and Samsara did move for summary judgment of noninfringement of claim 25 and, in doing so, did not advance the arguments in their current Motion. While this failure to raise the arguments in their previous Motion prevents them from now seeking summary judgment on such arguments, it does not constitute waiver of those arguments. A party is not required to affirmatively move for summary judgment on an argument in order to preserve that argument for trial, as long as the claim is adequately pled and disclosed. See Street v. Corr. Corp. of Am., 102 F.3d 810, 816 (6th Cir. 1996); Move, Inc. v. Real Estate Alliance Ltd., 221 F. Supp. 3d 1149, 1157 (C.D. Cal. 2016) ("[W]e are aware of no authority suggesting that [the party] was required to move for summary judgment on its . . . argument in order to preserve this argument."). Thus, while it is procedurally improper for the plaintiffs to attempt to raise the omitted

arguments now in a successive summary judgment motion, they are not precluded from presenting timely disclosed[4] noninfringement arguments to the jury at trial.

As to Woodway's Motion for Summary Judgment on infringement, the court notes that it is inconsistent for Woodway to argue that Chapco and Samsara are prevented from raising arguments that they could have raised at the prior summary judgment without holding itself to the same standard. As stated above, Woodway argues that the changes from the Gen. II to the Gen. III are irrelevant to claim 25. See Woodway's Mem. in Supp. at 8–9. Thus, following the same logic that Woodway applies to the plaintiffs' Motion, Woodway could have moved for summary judgment on claim 25 as to the Gen. II during the original summary judgment. In choosing only to move for summary judgment on claims 1, 6, 19, and 20, Woodway made a strategic decision. To quote Woodway's own words, "The Court should not indulge Plaintiffs' serial motion practice particularly when Plaintiffs made a strategic choice to handle their prior Summary Judgment Motion the way they did." Woodway's Mem. in Opp. at 14. Thus, applying Woodway's reasoning evenly to both parties, neither Woodway nor the plaintiffs can use the addition of the Gen. III in this case to circumvent their prior strategic decisions for a second chance at summary judgment that should have been sought the first time around. Like Chapco and Samsara, Woodway can present its previously disclosed infringement arguments to the jury, but it cannot now argue for summary judgment of infringement of claim 25 as to the Gen. III when it failed to do so previously as to the Gen. II.

---

[4] To the extent that either party argues that the other failed to timely disclose a theory in the Infringement, Invalidity, or Noninfringement Contentions, the court will entertain those arguments on Motions in Limine prior to trial.

In sum, both Motions for Summary Judgment are denied as improper uses of a successive summary judgment motion.

B.  <u>Claim Construction</u>

Finally, the court briefly addresses the construction of "providing" and "disposing on" in claim 25.  In their respective Motions for Summary Judgment, the parties appear to dispute the construction of these two terms, which neither party requested to be construed at the claim construction stage of the litigation.  <u>See</u> Woodway's Mem. in Supp. at 18, 25; Plaintiffs' Mem. in Supp. at 7, 9–11; Woodway's Mem. in Opp. at 4. Each side accuses the other of advancing an argument that was not disclosed in the Infringement Contentions or Noninfringement Contentions.  <u>See</u> Plaintiffs' Mem. in Opp. at 1–7, 24 (arguing that Woodway's Supplemental Preliminary Infringement Contentions did not advance the theory that "providing" includes assembly); Woodway's Mem. in Supp. at 17 (arguing that Chapco and Samsara admitted that the claim limitation of "providing" was satisfied because they did not challenge it in their Supplemental Noninfringement Contentions).  Indeed, neither the plaintiffs' Noninfringement Contentions nor Woodway's Infringement Contentions contains any discussion of the terms "providing" or "disposing on."  <u>See</u> Woodway's Infringement Contentions (Doc. No. 67-1) at 45–52; Woodway's Supplemental Infringement Contentions (Doc. No. 90-7) at 48–56; Plaintiffs' Noninfringement Contentions (Doc. No. 96-12) at 45–52; Plaintiffs' Supplemental Noninfringement Contentions (Doc. No. 96-8) at 49–57.

Moreover, each side also accuses the other of failing to identify "providing" and "disposing on" as disputed terms at the claim construction stage.  <u>See</u> Woodway's Mem. in Supp. at 9–12, 17, 24; Plaintiffs' Mem. in Opp. at 23–25.  Each side characterizes the other party as untimely requesting new claim construction while itself

14

purporting to apply the plain and ordinary meaning of the terms.  See Woodway's Mem. in Supp. at 18 (arguing that "providing" should be given its plain and ordinary meaning); id. at 25 (arguing that "disposing on" does not require construction and should be given its plain and ordinary meaning); Plaintiffs' Mem. in Opp. at 24–25 ("Plaintiffs and Dr. Giachetti apply the plain and ordinary meaning for those terms, consistent with Federal Circuit precedent.").

"It is routine case management to require litigants to identify the aspects of their case that are material to the dispute."  Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999).  Thus, "only those terms need to be construed that are in controversy, and only to the extent necessary to resolve the controversy."  Id.  The Federal Circuit has held that a party waives an argument with respect to a term if it fails to raise the argument during the claim construction phase.  Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C., 482 F.3d 1347, 1356 (Fed. Cir. 2007); see also Advanced Steel Recovery, LLC v. X-Body Equip., Inc., No. 2:12-CV-1004-GEB-DAD, 2014 WL 3939356, at *4 (E.D. Cal. Aug. 11, 2014), aff'd, 808 F.3d 1313 (Fed. Cir. 2015).  In this case, both parties failed to identify "providing" and "disposing on" as material to the dispute at the claim construction stage.

Nonetheless, claim construction is a question of law for the court, and "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."  O2 Micro International Ltd. v. Beyond Innovation Technology Co., Ltd., 521 F.3d 1351, 1362 (Fed. Cir. 2008).  In O2 Micro, the parties agreed that the term "only if" had a common meaning, but disagreed as to the scope of the claim term.  Id. at 1361.  The Federal Circuit held that the district court erred by failing to

adjudicate the disputed scope because it resulted in the parties improperly presenting their claim construction arguments to the jury. Id. Therefore, despite the untimely nature of the parties' arguments regarding the proper construction of "providing" and "disposing on," the court construes these terms and addresses the arguments that the parties now belatedly advance. See Cioffi v. Google, Inc., No. 213-CV-00103-JRG-RSP, 2017 WL 275386, at *5 & n.2 (E.D. Tex. Jan. 9, 2017), report and recommendation adopted, No. 213-CV-00103-JRG-RSP, 2017 WL 235011 (E.D. Tex. Jan. 19, 2017); Koninklijke Philips N.V. v. ZOLL Lifecor Corp., No. 2:12-CV-1369, 2015 WL 12781198, at *6–*9 (W.D. Pa. July 15, 2015).

      1.    "Providing"

Claim 25 uses the term "providing" in two steps: "[p]roviding a manually powered treadmill," and "[p]roviding a first bearing rail and a second bearing rail." '580 Patent at Col. 36, L. 2–9. Both parties purport to adopt the plain and ordinary meaning of the term "providing." See Woodway's Mem. in Supp. at 18, 25; Plaintiffs' Mem. in Opp. at 24–25. Generally, when the plain and ordinary meaning of a disputed term is clear and resolves the dispute between the parties, the court is not required to give the term any further construction. See Summit 6, LLC v. Samsung Elecs. Co., Ltd., 802 F.3d 1283, 1291 (Fed. Cir. 2015). However, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361.

In this case, despite the characterization of their arguments as arguments relating to claim construction, the parties do not appear to actually disagree about the construction of the term "providing," only its application to the facts of this case. The

parties agree that Federal Circuit precedent indicates that claim terms "are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (citation omitted). The ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." Id. at 1313. The Federal Circuit states that, in some cases, the plain and ordinary meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. In such circumstances, the court may look to general purpose dictionaries. See id.; Meyer Intellectual Properties Ltd. v. Bodum, Inc., 690 F.3d 1354, 1368 (Fed. Cir. 2012) (holding that "judges are free to rely on dictionary definitions when construing claims, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents" (internal quotation marks and citation omitted)).

Both parties here appear to agree that the meaning of "providing" is apparent, as none of the parties points the court to any intrinsic or extrinsic evidence beyond the claim terms themselves. The Merriam-Webster Dictionary defines "provide" as "to supply or make available (something wanted or needed)." Merriam-Webster Dictionary, "Provide," https://www.merriam-webster.com/dictionary/provide. A number of courts, including the Federal Circuit, have adopted a similar definition as the plain and ordinary meaning of the term. See Meyer Intellectual, 690 F.3d at 1369 (construing "providing" to mean "furnishing, supplying, making available, or preparing"); On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1341 (Fed. Cir. 2006) (construing

"providing" to have "its usual and customary meaning, including to supply for use, contribute, or furnish"); Timeline, Inc. v. Proclarity Corp., No. C05-1013JLR, 2007 WL 321387, at *4–*5 (W.D. Wash. Jan. 31, 2007) (construing "providing a driver" as "supplying or making available a driver"); Applied Interact, LLC v. Vermont Teddy Bear Co., No. 04 CIV.8713 HB, 2005 WL 2133416, at *7 (S.D.N.Y. Sept. 6, 2005).

Indeed, in this case, the parties actually appear to agree that the dictionary definition of providing is the plain and ordinary meaning of the term.  Plaintiffs argue that "providing" should be construed to mean "furnishing, supplying, making available, or preparing," as in Meyer Intellectual.  See Plaintiffs' Mem. in Supp. at 7.  Woodway similarly cites the construction of "providing" used in Lego Systems A/S v. Rubicon Communications, LP: "'to supply what is needed for sustenance or support,' . . . which is synonymous in its function with 'having.'"  Woodway's Mem. in Supp. at 18 (quoting Lego Sys. A/S v. Rubicon Comm'ns, LP, No. 3:15-CV-000823 (VLB), 2017 WL 4280866, at *15 (D. Conn. Sept. 27, 2017)).  Applying the same meaning of "providing" as the plaintiffs, Woodway then argues, "There can be no dispute of material fact that the employees who assemble the Gen III supply the treadmill with the claimed elements, including, for example, a first and second bearing rail, such that the treadmill contains or has these elements.  By assembling the Gen III, Plaintiffs' employees are making it available for use." Id. (emphasis added).

Thus, the dispute between the parties is not over the construction of the term "providing," but, rather, whether Chapco's assembly of the Gen. III satisfies this claim limitation.  Specifically, Chapco argues that it does not furnish or supply the manually powered treadmill because it does not assemble the running belt, nor does it supply or

make available the bearings on the bearing rail.[5]  See Plaintiffs' Mem. in Supp. at 8–9.

This is a factual dispute that depends in large part on whether Chapco can be found to

complete the assembly of the final product if its employees do so while leased to

Samsara.  See SJ Ruling at 6–8 (finding that a genuine issue of material fact exists as

to this issue).  This is not a dispute over the construction of the term "providing."

The Federal Circuit has held that, "[i]f the claim language is clear on its face, then

our consideration of the rest of the intrinsic evidence is restricted to determining if a

deviation from the clear language of the claims is specified."  Interactive Gift Exp., Inc.

v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001).  Intrinsic evidence includes

"the patent itself, including the claims, the specification and, if in evidence, the

prosecution history."  Id.  Neither party has made any argument based on the intrinsic

evidence, nor is the court aware of any intrinsic evidence that would indicate a deviation

from the clear language of the claims.

Accordingly, "providing" should be given its plain and ordinary meaning of

"furnishing, supplying, making available, or preparing," which is not disputed by the

parties.  See Meyer Intellectual, 690 F.3d at 1368.

---

[5] The plaintiffs also argue that Woodway cannot seek summary judgment based merely on the assembly of the product without identifying a liable entity because that would not satisfy the claim limitation of "providing."  See Plaintiffs' Mem. in Opp. at 12–16.  The plaintiffs do not appear to be arguing that, during the assembling process, the assembler does not "provide" the components.  Rather, the plaintiffs argue that abstract assembly is insufficient without an entity to do the action of "providing."  This is not an argument about claim construction, however.  Rather, it is an argument challenging the nature of the summary judgment Woodway seeks.  Therefore, it does not affect the court's claim construction analysis.

Moreover, such an argument is relevant only to Woodway's summary judgment argument, which the court has already declined to consider.  At trial, Woodway will need to prove liability against Chapco, Samsara, or both.

2.     "Disposing On"

The third step in claim 25 of the '580 Patent requires "[d]isposing a running belt on the plurality of bearings of the first bearing rail and the second bearing rail such that the running belt follows a top curved running surface corresponding to the curved top profile of the first and second bearing rail." '580 Patent at Col. 36, L. 10–14.  As with "providing," both sides claim to be applying the plain and ordinary meaning of the term "disposing on." See Woodway's Mem. in Supp. at 25 (arguing that "disposing" is a common term that does not require construction); Plaintiffs' Mem. in Supp. at 11.  Here, however, the parties agree that the plain and ordinary meaning should apply, but disagree as to what that meaning should be.  See O2 Micro, 521 F.3d at 1361 (noting that the parties agreed that the term had a common meaning, but nonetheless disputed the scope of the claim term, thereby requiring the court to resolve the dispute).

The plaintiffs argue that "[t]he plain and ordinary meaning of 'disposing' a running belt 'on' is locating the belt on the bearings so that they touch without intermediary components."  Plaintiffs' Mem. in Supp. at 11.  Woodway argues, to the contrary, that "disposing on" may be satisfied if the running belt and bearings are touching, but does not require them to do so.  See Woodway's Mem. in Opp. at 4–8.  Woodway argues that "disposing on" merely requires the actor "to provide a running belt and locate it above the bearing rails such that the running belt follows a top curved running surface corresponding to the curved top profile of the first and second bearing rails." Id. at 5.

The court begins by looking to the general purpose dictionary's definition of the terms.  The Merriam-Webster Dictionary defines "dispose" as "to put in place; set in readiness; arrange."  Merriam-Webster, "Dispose," https://www.merriam-webster.com/dictionary/dispose.  The parties do not appear to dispute this meaning of

the term "dispose," but, rather, concentrate their attention on the preposition "on." Dictionaries provide a number of varying definitions for "on," some, but not all, of which reference direct contact.  For example, the Merriam-Webster Dictionary's definitions of "on" include "used as a function word to indicate position <u>in contact with and supported by</u> the top surface of."  <u>Merriam-Webster</u>, "On," https://www.merriam-webster.com/dictionary/on (emphasis added).  The Merriam-Webster Dictionary offers as an example, however, the following: "the book is lying on the table."  <u>Id.</u>  The court notes that, even though the definition requires contact and support, this example is more ambiguous.  In common parlance, people are likely to consider a book to be "on" the table, even when the book is on a tablecloth or a place mat rather than directly touching the table.  Moreover, the Oxford-English Dictionary defines "on" as "<u>above and in contact with</u>; at rest on the upper surface of; <u>above and supported by</u>."  <u>Oxford-English Dictionary</u>, "On," http://www.oed.com/view/Entry/131297?isAdvanced=false&result=5&rskey=q1jZBc& (emphasis added); <u>see also</u> <u>id.</u> ("Of local position outside of, but <u>in contact with</u> <u>or close to</u>, a surface." (emphasis added)).  Thus, general purpose dictionaries appear to permit both constructions of the term that require contact and constructions that do not.[6]

---

[6] In one case, the district court for the Southern District of New York considered these two constructions of the words "disposed on."  <u>See</u> <u>Seoul Viosys Co., Ltd. v. P3 Int'l Corp.</u>, No. 16-CV-06276 (AJN) (SN), 2017 WL 4011493, at *3–*6, *8 (S.D.N.Y. Sept. 11, 2017).  The <u>Seoul Viosys</u> court held that, in three of the four patents at issue, based on the specification, "on" meant "directly on or directly connected to the other element or layer, or intervening elements or layers may be present."  <u>See id.</u>  In one of the four patents, the court held that "on" meant "directly on or directly connected to the other element or layer."  <u>See id.</u> at *5–*6.  While the patent in that case was different from the '580 Patent before this court in that the specification provided more explicit guidance regarding the meaning of the term "on," the case does support the conclusion that the word "on" is capable of reasonably bearing both constructions.

Here, the court must read the term in the context of the claim language, as well as of the entire patent. See Phillips, 415 F.3d at 1313. In this case, there is nothing in the claim language to indicate that "disposing on" is limited to the more restrictive definition of "on." The claim does include specific requirements as to the relationship between the running belt and the bearing rails, i.e. that the running belt must be disposed "such that the running belt follows a top curved running surface corresponding to the curved top profile of the first and second bearing rails." '580 Patent at Col. 36, L. 11–14. The fact that the specific relationship between the running belt and the bearing rails is described without expressly requiring that the two must touch supports Woodway's interpretation that direct contact between the two components is not required.

Additionally, the court looks to the rest of the patent, including the specification, to determine how a person of ordinary skill in the art would read the claim term. See Interactive Gift, 256 F.3d at 1331 ("If . . . the claim language is not clear on its face, then our consideration of the rest of the intrinsic evidence is directed to resolving, if possible, the lack of clarity."). The only intrinsic evidence referenced by either party is the use of the language "supported by" in claim 1.[7] See Plaintiffs' Mem. in Supp. at 10–11. The plaintiffs argue that Dr. Blair opined that the term "supported by" does not require the components to directly touch. See id. at 10. Therefore, the plaintiffs contend that "'disposing on' cannot mean indirect support, or the patentee would have used 'supported by.'" Id. (citing CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,

---

[7] The parties make no arguments based on the specification or the prosecution history. Any arguments not made at the claim construction stage are waived. See Cent. Admixture, 482 F.3d at 1356.

224 F.3d 1308, 1317 (Fed. Cir. 2000) (instructing courts to "presume that the use . . . of different terms in the claims connotes different meanings")). Woodway counters by arguing that it is appropriate to assign the same or similar meanings to two distinct terms that are similar in meaning. See Woodway's Mem. in Supp. at 6–7 (quoting, inter alia, Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1120 (Fed. Cir. 2004) ("[T]he context does not show that 'connected' and 'associated' should be differentiated into the definitions proposed by [defendant], and we must conclude that this is simply a case where the patentee used different words to express similar concepts, even though it may be confusing drafting practice.").

The court is not persuaded by the plaintiffs' argument. First, a more natural explanation for the use of the two different terms is that the patentee likely uses "disposing on" instead of "supported by," not to distinguish between direct and indirect support but, rather, to distinguish between an action done by the assembler of the product and a passive description of the relationship between the components. Claim 1 is an apparatus claim, and "supported by" describes the relationship between the running belt and bearing rails. Claim 25, on the other hand, is a method claim, which requires certain steps to be taken by the patent infringer. In that context, "disposing on" describes what the assembler does to the running belt and the bearing rails. Thus, the court is not persuaded by the plaintiffs' argument that the use of the term "disposing on" rather than "supported by" should be read to import the added requirement that the two components be directly touching. Rather, it is more likely that claim 1 and claim 25 describe the same or similar positioning between the running belt and bearing rails, but that claim 25 uses terms that describe the steps taken by the assembler.

Second, the specification further supports a construction of "disposing on" that requires the running belt to follow the curved running surface corresponding to the curved profile of the bearing rails, as specified expressly in claim 25, but without necessarily requiring the running belt to directly touch the bearings or bearing rails. The plaintiffs have not pointed to any language in the specifications that would require direct contact between the two components or indicate why direct contact is relevant to the claim. See KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("[W]hen the claim language or context calls for further inquiry, this court consults the written description for a clear intent to limit the invention to a singular embodiment.").

The specification of the '580 Patent discusses the relationship between the running belt and the bearing rails primarily in the context of the need to maintain the non-planar shape of the running belt. See '580 Patent at Col. 13, L. 13–15 ("Following the shape of the bearing rails [200] is not the natural tendency of the running belt for the particular contour seen in FIG. 5."). In this context, the focus is on ensuring that the shapes correspond, not that the components directly touch. See id. at Col. 13, L. 50–57 ("In the exemplary embodiment shown in FIG. 5, when positioning the running belt [16] about the front and rear running belt pulleys [62, 66], a length of the running belt [16] sufficient to permit the running belt [16] to correspond to (e.g., follow, be positioned against or above, etc.) the desired contours of the bearing rails [200] and the front and rear running belt pulleys [62, 66] is generally disposed between the front and rear shafts [64, 68]."). A running belt can follow or be positioned above a bearing rail without necessarily touching the bearings. For example, an intermediary component that

similarly follows the shape of the bearing rails would not prevent the running belt from corresponding to, following, or being positioned above the bearing rails.

The court notes that the specification does describe an exemplary embodiment in which the "running belt [16] contacts and is supported in part by the bearings [208] of the bearing rails." '580 Patent at Col. 11, L. 58–59. However, the specification does not indicate that contact is required. Therefore, the court does not read this particular exemplary embodiment as precluding an embodiment in which the running belt is supported by, but not in contact with, the bearings. See KCJ Corp., 223 F.3d at 1356 ("Moreover, standing alone, a disclosure of a preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment. '[A]lthough the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments.'" (quoting Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1054 (Fed. Cir. 1994))); Probatter Sports, LLC v. Sports Tutor, Inc., No. 3:05-CV-01975 (VLB), 2014 WL 1315991, at *4 (D. Conn. Mar. 31, 2014). Indeed, in this context, the specification expressly provides that "other suitable shape-providing components may be used in combination with the bearing rails." '580 Patent at Col. 12, L. 7–10. Thus, the specification contemplates other embodiments that maintain the shape of the running belt, as required by the claim language.

Therefore, based on the claim language itself and the intrinsic evidence, the court construes "disposing on" to mean "placing above," such that the running belt may, but is not required to, touch the bearings or the bearing rails.

**V.   CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is

**DENIED**, and Woodway's Motion for Summary Judgment is **DENIED**.  Woodway's

corresponding three Motions to Seal are **GRANTED**.  <u>See</u> Motion to Seal Second

Supplemental Expert Report of Kim B. Blair (Doc. No. 237); Motion to Seal

Memorandum in Support of Woodway's MFSJ (Doc. No. 260); Motion to Seal

Memorandum in Opposition to Plaintiffs' MFSJ (Doc. No. 270).

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of July, 2018.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge